THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD M. SEYMOUR, Plaintiff in Error.

*Opinion filed February 16, 1916—Rehearing denied April 7, 1916.*

1. APPEALS AND ERRORS—*Supreme Court cannot review questions not decided by Appellate Court.* Upon writ of error to the Appellate Court the question is whether the Appellate Court committed any error in its judgment, and the Supreme Court cannot review any question which the Appellate Court did not decide or could not have decided.

2. CONTEMPT—*party not entitled to jury trial in proceeding for contempt.* Where leave is given to file an information charging the defendant with contempt for acts committed out of the presence of the court in disregarding the process of the court, the defendant determines, by his own answer under oath, whether he is guilty of that which is charged against him as a contempt of court, and if he fails to thereby purge himself of the contempt the court may at once impose punishment, and the defendant is not entitled to a trial by jury.

3. SAME—*the right to refuse to answer is a personal privilege which is waived if not claimed.* The right of a person to refuse to answer on the ground that his answer may tend to incriminate him is a personal privilege, which, if not claimed, is waived and cannot be thereafter made the basis of a claim of deprivation of a constitutional right.

4. SAME—*court has inherent power to punish contempt against its dignity and authority.* No statute is necessary to give authority to a court to punish any interference with its orders in the administration of justice, and on appeal from a judgment imposing a fine for contempt the question whether the statute authorizing the court to act in the matter is unconstitutional is not important.

5. SAME—*when fact that there was due process of law is not debatable.* Where an information fully informs the defendant of the acts charged against him as a contempt of court and by his answer to the information and to the interrogatories he admits the facts and is found guilty upon his own answer, there can be no debatable question but that there was due process of law.

6. SAME—*direct appeal to Supreme Court cannot be based on claim that a fine of $50 is cruel and unusual punishment.* The imposition of a fine of $50 for a contempt of court of which the defendant is admittedly guilty is so clearly not a cruel and unusual punishment that a direct appeal to the Supreme Court cannot be predicated upon such a claim.

7. SAME—*what fact does not excuse a contempt of court.* The fact that the sympathies of an attorney for his client are greatly aroused by the manner in which he was informed and believed she had been treated in an action of forcible entry and detainer and in the execution of the writ of restitution does not justify him in advising her to disregard the process of the court and forcibly re-take and hold possession of the premises.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on· writ of error to the Municipal Court of Chicago; the Hon. FRANK H. GRAHAM, Judge, presiding.

SCOTT O. CAVETTE, and E. M. SEYMOUR, *pro se,* (WILLIAM H. FISH, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, and MACLAY HOYNE, State's Attorney, (GEORGE P. RAMSEY, and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 3, 1913, John Stelk, attorney for Anton J. Cermak, bailiff of the municipal court of Chicago, presented to the court an information, supported by his affidavit, alleging that a writ of restitution issued out of said court on February 25, 1913, in an action of forcible detainer, wherein the court had jurisdiction of the parties and subject matter, in which the Eagle Brewing Company was plaintiff and Anna Przybylski was defendant, commanding said bailiff to dispossess said defendant of the premises therein described and to restore possession to said plaintiff; that the writ was delivered to John Remus, a deputy bailiff, for.service, and that Remus on February 28, 1913, dispossessed the defendant of the premises but still held the writ, not having made any return of it. The information charged that on February 28, 1913, the plaintiff in error, Edward M. Seymour, became the attorney for the defendant in the writ, and with full notice and knowledge of the existence

of the writ and the action of the deputy bailiff thereunder, and without leave of court, advised and directed the defendant to re-possess herself of the premises by force and to withhold possession from the plaintiff and bailiff, and that said defendant, acting upon said advice and direction, re-possessed herself of the premises and held the same until she was again dispossessed by the bailiff, and afterward the defendant, on the advice· and direction of plaintiff in error, broke open the rear storm door of the premises, and was about to break open another door, when she was threatened with bodily harm by the custodians and left the premises. The court gave leave to file the information and ruled the plaintiff in error to answer within ten days.

The plaintiff in error filed his answer, making a part of it an affidavit of Anna Przybylski and copies of a lease and contract of purchase, and he afterward answered interrogatories filed in the court. His answer, with the accompanying documents, set forth the following state of facts: Anna Przybylski, the defendant in the forcible detainer suit, was a widow with six children, none older than thirteen years and all depending wholly upon her earnings for a living. She was served with process in the forcible detainer suit, and, being ignorant of all such matters, she employed an attorney to defend her. Judgment was entered against her by default. The next day she appeared in the court with her attorney and asked·the court to vacate the judgment, but her motion was denied. The premises were owned by John Kanopa and Marcianna Kanopa, his wife, and were leased to Paul Tyda and Frances Tyda, his wife, and, so far as the plaintiff in error knew, the Eagle Brewing Company had no lease. On February 21, 1913, after the judgment but several days before the writ was issued, Anna Przybylski made a contract with Kanopa and wife for the purchase of the premises at a price of $6000 and paid $50 on the purchase price. She was to pay $3950 in forty days and receive a warranty deed subject to existing leases ex-

piring monthly and to be entitled to the rents from February 20, and the premises were to be subject to an incumbrance of $2000. The answer denied that the bailiff dispossessed the defendant on February 28 but alleged that he did dispossess and evict her on February 27. On February 28 Anna Przybylski appealed to the plaintiff in error for legal assistance and informed him of the above facts and that she had purchased the premises in question after the action of forcible detainer had been instituted against her. He was informed that she told the bailiff of her purchase but that he swore at her and called her a liar; that she begged of him to wait at least until she could communicate with her attorney, but that he refused to wait and her property and children were thrown out in the snow; that the weather was terribly cold and she begged to remain until she could provide for the six little children; that the men drank her liquor and beer and were all drunk and threw out all her effects, including $1200 which she had hidden under a mattress. Plaintiff in error having this information went to the recorder's office and read the contract of purchase of the premises and then went to the office of the clerk of the court to see the files in the cause and the writ issued, which he supposed had been returned. He found nothing in the files and went to the bailiff's office but obtained no information there except that the writ had been executed and the keys given to Stanley Walkowaik, attorney for the Eagle Brewing Company, and that Remus still had the writ. The plaintiff in error then went to the judge who entered the judgment and appealed to him, but the judge said that nothing could be done except on notice to opposing counsel and by going into court. Plaintiff in error then went to police headquarters and told the assistant chief of police that the woman and her six children would freeze in the street unless something could be done at once, and secured a promise from the officer that nothing would be done with her while she entered the premises. He then

told Mrs. Przybylski to go back to the house, and, if no officer was in charge, to pull the lock off the door, put her beds and property inside and stay there until the further order of the court and to come to his office the next day. He sent a young man from his office with her to see that his directions were carried out, and instructed them not to create a disturbance and to make sure that no officer of the court was in actual possession. She went to the premises, pulled the lock off the door and put her property back and took possession. The next day the bailiff again evicted the defendant, and after that eviction the plaintiff in error went to the premises and the defendant pointed out her broken bedstead lying on the sidewalk, with the mattress under which she claimed she had hidden $1200 preparatory to making a payment upon the property. It was then very stormy and bitter cold and the little children were crying. A lot of broken furniture was lying on the sidewalk and clothing was scattered on the ground. The plaintiff in error denied that he gave the defendant any direction but that she of her own accord went to the rear of the building and opened the storm door, when someone inside told her if she did not go away he would shoot her, and she left.

In connection with the facts so stated in detail the plaintiff in error made a general denial of any intention to commit a contempt of court, and denied that he advised or directed the defendant to re-possess herself of the premises or that he advised her to break open the rear storm door. Concerning the charge that the plaintiff in error advised the defendant to break open the rear storm door and attempt to force the inner door after the second eviction the fact stated was a sufficient answer and denial, but as to the remainder of the charge the facts stated are inconsistent with and contradict his conclusion. The facts stated show that he committed the acts charged as a contempt of court.

The court, upon consideration of the answer of plaintiff in error, imposed upon him a fine of $50, with an order

that he should be committed to the county jail until the fine should be paid or he should be discharged according to law. The writ of error was sued out of this court to review the judgment, upon the ground that various constitutional questions were involved and that certain provisions of the Municipal Court act were void. It appeared to this court that either the record did not present the supposed constitutional questions or that they had been so long and firmly settled as not to be the subject of dispute or debate, and therefore the cause was transferred to the Appellate Court for the First District. That court affirmed the judgment, and the present writ of error was sued out to reverse the judgment of the Appellate Court.

When the cause was transferred to the Appellate Court it was determined that the plaintiff in error was not entitled to a review of the judgment in this court on the ground that a construction of the constitution or the validity of a statute was involved, because the questions were either not raised in the municipal court or had long since been settled. Under this writ of error the question is whether the Appellate Court committed any error in its judgment, and this court cannot review any question which the Appellate Court did not decide and could not have decided. Nevertheless, the argument for plaintiff in error is devoted almost wholly to claims that constitutional rights were denied to him by the municipal court and that provisions of the Municipal Court act are unconstitutional and void. The position of plaintiff in error is that these questions are all involved and that the case ought not to have been transferred to the Appellate Court, and on account of the persistence with which the questions are presented and repeated the reasons for the transfer will be made plain.

One of the claims is that a constitutional right of the plaintiff in error was violated in the municipal court in denying him a jury trial. The question does not arise upon the record for the reason that he never asked for a jury

trial, but if he had, there was no issue for a jury to try. In a case where the proceeding for contempt is for acts committed, not in the presence of the court and not in furtherance of the remedy sought in a suit or in enforcement of the orders or decrees of the court but to maintain the authority of the court and uphold the administration of justice, if the party should answer denying the alleged wrongful acts his answer is conclusive and he is entitled to his discharge. (*Crook* v. *People,* 16 Ill. 534; *Buck* v. *Buck,* 60 id. 105; *People* v. *Diedrich,* 141 id. 665; *Oster* v. *People,* 192 id. 473.) If, on the other hand, the answer admits the material facts charged to be true and the facts constitute a contempt of court, punishment is imposed upon the answer. In either case no issue of fact is or can be formed. The defendant determines, by his own answer under oath, whether he is guilty of that which is charged against him as a contempt of court, and if he fail thereby to purge himself the court may at once impose the punishment. *Storey* v. *People,* 79 Ill. 45.

The plaintiff in error also alleges that he was deprived of a constitutional right by being compelled to give evidence against himself, but no question of that kind arises on the record since he claimed no exemption from answering. The right to refuse to answer on the ground that the answer might tend to incriminate the witness is a personal privilege, which, if not claimed, will be waived. *Bolen* v. *People,* 184 Ill. 338.

Plaintiff in error further contends that provisions of the Municipal Court act under which he says the proceedings were had are unconstitutional and void, but whether that is so or not is of no importance in this case, since it requires no statute to give authority to a court to punish any interference with its orders in the administration of justice. Without any statutory provision the court has power to punish for contempt, and that power has been recognized from the very beginning of judicial adminis-

tration in this State and has been constantly repeated. In *Clark* v. *People,* Breese, 340, this court said that all courts have an incidental power to punish contempts against their authority or dignity. In *Stuart* v. *People,* 3 Scam. 395, it was held that the power to punish for contempt is inherent in every court of justice, and necessarily includes all acts calculated to impede, embarrass or obstruct the court in the due administration of justice; and it was again said in *People* v. *Wilson,* 64 Ill. 195, that power to punish for contempt is an incident to all courts of justice, independent of statutory provisions.

Again, the plaintiff in error urges that the constitutional guaranty of due process of law was violated; but that was not a debatable question, since every constitutional requirement, as defined by the authorities, was observed. The plaintiff in error was apprised by the information of the nature of the charge against him and the facts he was called upon to explain, deny or justify. By the facts stated in his answer to the rule and to the interrogatories he admitted the facts, and the court found him guilty upon his own answer, so that there is no question but that there was due process of law. *Flannery* v. *People,* 225 Ill. 62.

The last particular in which the plaintiff in error says that the constitution of the United States and the constitution of the State of Illinois were violated is that the punishment imposed by the municipal court was excessive, cruel and unusual; but it is so clear that a fine of $50, which might have been imposed for almost any misdemeanor within the jurisdiction of a justice of the peace, was not a violation of a constitutional right that such fact did not furnish a reason for bringing the record direct to this court.

For the above reasons the cause was transferred to the Appellate Court.

The acts of the plaintiff in error detailed by him in his answer showed that he had committed the acts charged against him as a contempt of the court, and such acts con-

stituted a contempt which required the imposition of punishment for the maintenance of the authority of the court and the administration of justice. The only fact alleged as an excuse for what the plaintiff in error did was that his sympathies for the defendant were aroused on account of the manner in which she had been treated as he was informed and believed, but that fact, however creditable to him, afforded no legal justification for his interference with the process of the court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*