## The People of the State of Illinois, Defendant in Error, v. G. W. Gilbert, Plaintiff in Error.

### Gen. No. 6,066.

1. CONTEMPT, § 30*—*when courts have power to punish as contempt publication of news articles concerning case in court.* Courts have power to punish as a contempt the publication of news articles concerning a case pending in the court which reflects on the court's action therein or impeaches its integrity or seeks to intimidate it by threats of popular clamor.

2. CONTEMPT, § 30*—*when court may punish as contempt making of publication concerning case in court.* In order to authorize a court to punish a publication of news articles concerning a case in court as a contempt, the publication must have been while the cause was pending so that it was calculated to embarrass the court and bring its further action therein into disrepute.

3. LIS PENDENS, § 2*—*when action is pending.* An action is pending from its beginning to final judgment pronounced and entered.

4. CONTEMPT, § 69*—*when evidence sufficient to show that cause was pending at date of publication.* Evidence *held* to show that the cause as to which a certain newspaper publication was made was pending at the date of such publication, where it appeared a decision was rendered by the court in said cause shortly prior to such publication and the cause continued to a date subsequent

thereto for further disposition, in a proceeding to punish for contempt in making such publication.

5. CONTEMPT, § 2*—*what is power of County Court to punish for.* A County Court, though one of limited jurisdiction, has power to punish as a contempt a newspaper publication as to a case then pending before it.

6. CONTEMPT, § 40*—*what is effect of newspaper proprietor's lack of knowledge of libel on liability for contempt.* A newspaper proprietor's lack of knowledge of a libel published therein should influence the degree of his punishment for contempt of court but not exonerate him from liability.

7. CONTEMPT, § 69*—*when evidence is sufficient to show that publication of newspaper article as to cause in court is injurious.* The evidence *held* to show that a certain newspaper publication as to a cause then pending in court was calculated to impede and embarrass and obstruct the court in the due administration of justice in the cause and be properly punishable as a contempt.

Error to the County Court of Boone county; the Hon. WILLIAM C. DE WOLF, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed February 10, 1917.

ALEXANDER J. STROM and WILLIAM L. PIERCE, for plaintiff in error.

DAVID R. JOSLYN, for defendant in error; WAITE & DONOVAN, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

On November 27, 1914, an information was filed in the County Court of Boone county, charging that G. W. Gilbert, on June 27, 1914, published in a newspaper in Belvidere, in said county, of which he was the editor and proprietor, an article set out in the information, concerning a cause then pending in said court, which was a contempt of court. The information was under oath. Gilbert filed an answer and also filed answers to interrogatories propounded to him by the relator, all of which were under oath. He also

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

filed certain affidavits by other parties. There was a hearing and these matters were offered in evidence, and the respondent was found guilty and sentenced to pay a fine of one hundred and fifty dollars, and to imprisonment in the county jail for twenty-four hours. Gilbert brings the judgment here for review. We reversed the judgment on the ground that the suit was not pending in the County Court at the time of the publication of the article complained of. On a petition for rehearing we found in the bill of exceptions certain matters material to that question which had not been incorporated in the abstract. We therefore granted a rehearing to consider that subject.

The power of courts to punish, as a contempt, the publication of articles in newspapers concerning a case pending in court which reflects upon the action of the court therein, or impeaches its integrity, or seeks to intimidate the court by a threat of popular clamor, is well established. *People v. Wilson,* 64 Ill. 195, expresses the views of the Supreme Court of this State on that subject. The latest expression is in *Schmidt v. Cooper,* 274 Ill. 243, where the court said: "The power to punish for contempt is inherent in every court of justice, and necessarily includes all acts calculated to impede, embarrass or obstruct the court in the due administration of justice, and the power is independent of statutory provisions." Other cases are there cited in support of the doctrine. This doctrine is supported, with full discussion and the citation of many authorities, in *Cooper v. People,* 13 Colo. 337, 373, 6 L. R. A. 430; *Telegram Newspaper Co. v. Com.,* 172 Mass. 294, 44 L. R. A. 159; *State v. Bee Pub. Co.,* 60 Neb. 282, 50 L. R. A. 195; *Hughes v. Territory,* 10 Ariz. 119, 6 L. R. A. (N. S.) 572; 9 Cyc. 20. It is, however, clearly pointed out in these authorities that in order to authorize a court to punish a publication as a contempt, the publication must have been

while the cause was pending, so that it was calculated to embarrass the court, and bring its future action therein into disrespect. An action is pending the entire time from the beginning of the action until final judgment has been pronounced and entered up. 30 Cyc. 1364, note.

It appears from the record that there had been an election in the Town of Belvidere upon the question whether that town should become dry territory, and that election seems to have resulted in making the town dry, and a suit had been brought by several parties in the County Court to contest that election, and there had been an order for the counting of ballots, and a decision by the court thereafter, upon argument, that the ballots should not be counted except those cast in the third precinct. Then followed the publication here involved. In the brief filed by respondent to the petition for a rehearing, it is alleged that, except a brief statement in the information that said publication concerned a cause then pending in said court and not finally determined, there can be nowhere in this record found any proof that there was a cause then pending in the County Court when said publication was made, and that a search of the record from beginning to end will not reveal any reference to a case pending in court. This is not a correct statement of the condition of the record. The decision of the court that certain ballots should not be counted was made on June 24, 1914. The article was published on June 27, 1914. The answer of the respondent, which was under oath, states that respondent has recently learned, since the information was filed, that there was still pending in said County Court, on June 27, 1914, the cause described in the information concerning the integrity and validity of said election, but that on the date of said publication respondent supposed the proceeding had been disposed of by the ruling of the court refusing to admit certain

ballots in evidence.   Therefore the answer squarely admits that the cause was then pending.   The abstract filed by respondent, and upon which we relied in our former decision, entirely omitted the following contained in the bill of exceptions: "Let the record show that after the date mentioned in the affidavit of a conference, the cause proceeded, and witnesses testified, and the matter was pending for some couple of weeks."   The conference referred to in this statement is shown by the affidavits to have taken place on June 24, 1914, after the decision of the court in relation to counting the ballots.   The bill of exceptions does not directly show whether this was in the nature of a stipulation or was inserted by direction of the trial judge, but it is followed by the following stipulation, which was also omitted from the abstract: "It is *also* agreed and stipulated that the record shows there was no session of the court and no hearing in said cause from the 25th day of June to the 29th day of June, but that the cause in question was on hearing on the 25th day of June, at which time said cause was continued by order of court until June 29th, 1914."   This makes it plainly appear that it was stipulated at the hearing of this proceeding for contempt that the election contest was pending when said publication was made, and for nearly two weeks thereafter, and that witnesses thereafter testified in the cause. A careful examination of the affidavits offered in evidence by respondent reveals plain indications that the cause was still pending.   This proof shows that after the decision of the court regarding the ballots on June 24th, the three attorneys for the persons who were contesting the election and one or more of said contestants and the respondent. Gilbert held a conference at the office of one of said attorneys.   It is clear that respondent was then told that this decision was regarded by the attorneys as fatal to success in

the cause; that the contestants would not be able to prove a sufficient number of illegal votes to defeat the official return of the election, and that the cause was not likely to be further prosecuted by the contestants, but that they wished respondent not to indicate that in his newspaper, so that the defense in the election contest should not know that they were likely not to press the matter further. The article of which complaint is made contains evidence on its face that the election contest was not yet ended, but it is not necessary to discuss that further, because the matters omitted from the abstract but contained in the bill of exceptions show without question that the suit was pending when this publication was made and for some time thereafter. It is not the law that when a ruling has been made in a pending case it cannot be a contempt of court to abuse the court for that ruling because that particular ruling is past. There is never an occasion to discuss a ruling in a pending case until that ruling is made, and if that publication is calculated to impede, embarrass or obstruct the court in the due administration of justice, then it is a matter which the court possesses an inherent power to punish. It is suggested in the briefs that the County Court, being a court of limited jurisdiction, has no such power. In Illinois the County Court is established by the Constitution, and we have no doubt that it is as much within the protection of the rules above announced as any other court in the State. Authorities in the various States contain interesting discussions of the question when a case ceases to be pending in court; as, for example, that it is pending while the court has power to grant a reconsideration of the cause, and the like. But inasmuch as it clearly appears here that beyond all question the case was still pending and undecided, we find it unnecessary to consider the question when a case ceases to be pending.

The article complained of is of great length, and it would unduly extend this opinion to insert it here. The heading of the article was as follows: "The wet and dry controversy still in the melodrama stage. Judge DeWolf makes grandstand play in rejecting the recount of ballots as evidence in four of the five wards in the city." The important words in said heading begin with capital letters, so as to catch the attention of the reader. Respondent states that he did not write this heading, nor know of it until after the paper was issued. It was held in *People v. Wilson, supra,* that such lack of knowledge by the respondent should influence the degree of punishment, but does not exonerate the proprietor of the newspaper from responsibility. The rest of the article respondent admits that he wrote, and that it was published in the paper, and that he owned and edited the paper, and that the article was circulated. The article set out a section of the election law which required the ballots to be opened in open court. It seems that an order had been entered naming three men who should open and count the ballots, and it is in said article insinuated that the judge of the County Court violated the law in entering that order. Of course he did not violate the law if the order was entered by consent of the parties, and one of the affidavits offered in evidence by respondent tends to show that they were concurring in the making of such an order. It seems that these three men appointed by the court conducted the count of the ballots in a private room in a bank, and this is commented upon adversely. The article also alleges that this work would cost the county sixteen dollars per day. It appears that at the hearing of the argument upon the question whether the ballots should be permitted in evidence, the judge of the County Court called two other county judges to sit with him and hear the arguments, informing counsel, however, that this was only

advisory, and that the decision would be made by the judge of that county alone. This action is criticised in the article, and it is plainly intimated that there were no questions involved that required the presence of three judges. It is charged in the article that in deciding that matter the County Court did not read or refer to all of the cases which the contestants had cited, and especially omitted *West v. Sloan,* 238 Ill. 331,. where the Supreme Court held that under the statute the ballots were admissible in evidence in any event, but that their probative force depended upon the care with which they had been preserved. This was calculated to influence the public to believe that the judge had been unfair in his decision of the matter then pending. The respondent failed to state that the opinion in said case further said that if the ballots had been so carelessly kept as to be exposed to change their effect as evidence would be destroyed, and that the burden is on the contestant to show that the ballots are in the same condition as when cast, and unless their preservation has been such that there has been no reasonable opportunity for tampering with them they cannot overcome the returns; and that in that case, which was an election contest in the County Court, after reviewing the facts, the Supreme Court held that the probative force of the ballots had been destroyed. It is clear from the article itself that what the County Court of Boone county held was that the ballots of certain precincts were so situated that under that rule they could not overcome the returns, and that so far as appears the only respect in which he departed from that decision was that instead of saying they could not overcome the returns he said they would not be admitted in evidence. The article proceeded to say that the court could have admitted these ballots in evidence in harmony with the law, and would thereby have furthered the ends of justice, which could not be

reached by rejecting the ballots. The article declared that there was a strong desire by the public to ascertain the true facts, and that if the people had the power to recall decisions, as they ought to have, this decision would be recalled; that the other two judges sitting with the county judge of Boone county had no weight with any thinking man; that the editor hoped that justice would prevail in the end; and that the editor did not believe that the decision of the County Court was in keeping either with the preponderance of the decisions of the Supreme Court or was in harmony with law or public opinion; that the people ought to have the right to recall this decision, and that the county judge in such a case becomes an absolute czar; that in the third precinct, where the ballots were properly preserved, the wets made a clear gain of fifteen votes, and, taking that as a basis, any man could see what the actual majority would have been if the returns by the election judges had been correct, and that what the editor wanted was a square deal, simple, old-fashioned justice, with the word "justice" printed in capitals.

The County Court still had complete jurisdiction of the cause and power to set aside the action it had taken. It still had power to decide that all the votes should be counted. It still had power to require that to be done in open court. The charge that he had violated the law in the manner in which the ballots had been opened and counted, and in afterwards rejecting the ballots in certain precincts, was calculated to intimidate a weak judge. It was calculated to arouse public passion and prejudice against the decision which had been made. In *People v. Wilson, supra,* the Supreme Court had under consideration a publication in a newspaper of an article reflecting upon the action of the Supreme Court in granting a *supersedeas* in a criminal case. On this subject the court there said:

"A court will, of course, endeavor to remain wholly uninfluenced by publications like that under consideration, but will the community believe that it is able to do so? Can it even be certain in regard to itself? Can men always be sure of their mental poise? A timid man might be influenced to yield, while a combative man would be driven in the opposite direction. Whether the actual influence is on one side or the other, so far as it is felt at all, it becomes dangerous to the administration of justice. Even if a court is happily composed of judges of such firm and equal temper that they remain wholly uninfluenced in either direction, nevertheless a disturbing element has been thrown into the council chamber, which it is the wise policy of the law to exclude." The court there further said: "It is a contempt, because, in a pending case of the gravest magnitude, it reflects upon the action of the court, impeaches its integrity, and seeks to intimidate it by the threat of popular clamor." On the same subject, it was said, in *State v. Bee Pub. Co., supra:* "Men have in the past yielded to the demands of an angry populace, and it is quite possible that they may yield again. Moral fiber is not stronger now than it ever was before. Courts are charged with the function of administering justice, and it is their duty, not only to give to every suitor his demandable right, but to give him assurance that no banned and hostile influence shall operate against him while his cause is under consideration. A litigant is entitled, not only to a just decision, but to a decision altogether free from the suspicion of having been coerced. Nothing else will satisfy him; nothing less can fill the measure of his expectations. He has no standard with which to gauge judicial firmness; and if the court had been exposed to influences calculated, as in the *Kennedy* case [60 Neb. 300], to tell against him, he will not know whether an adverse decision is the voice of the law or

The People v. Gilbert, 204 Ill. App. 97.

an echo of the mob." Respondent denied that he intended to commit a contempt of court. This denial is unavailing if the facts show that a contempt of court was committed. In *People v. Seymour,* 272 Ill. 295, the person charged with contempt made a general denial of any intention to commit a contempt of court, but it was held that the admissions of the answer showed that he committed the acts charged, and that they were a contempt of court, and the judgment was sustained. The respondent here disclaims any intentional disrespect of the court and any design to embarrass the administration of justice. It was held in *People v. Wilson, supra,* that such a disclaimer would not be accepted as a reason for discharging the respondent, but that the meaning and intent of the respondent must be determined by a fair interpretation of the language used by him in the objectionable article, and such is also the holding in *People v. Seymour, supra.* We do not doubt that the publication of this article in respondent's newspaper while the cause was pending was calculated to impede and embarrass and obstruct the court in the due administration of justice in that cause. Nothing we have said is intended to even suggest any restraint upon the liberty of a newspaper to freely discuss all features of a case after it has ceased to be a pending cause. If such a discussion is unlawful it can then only be punished in a proper legal action. For the reasons stated the judgment is affirmed.

*Affirmed.*