In re Estate of James Thomas Kelly, Deceased.
Halbert O. Crews and The People of the State of Illinois, Defendants in Error, v. Julius P. Waitches, Plaintiff in Error.

Gen. No. 38,210.

Opinion filed April 22, 1936.   Rehearing denied May 5, 1936.

FRANK A. McDONNELL, of Chicago, for plaintiff in error; ELWYN E. LONG, of Chicago, of counsel.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for certain defendant in error.

MR. JUSTICE HEBEL delivered the opinion of the court.

This writ of error directed to the probate court of Cook county was issued upon the request of Julius P. Waitches for the purpose of reviewing the record in a contempt proceeding, wherein this respondent, together with others, was found guilty in the probate court of Cook county and committed to the county jail for a period of one year, unless sooner discharged in due course of law.

This proceeding was instituted upon a petition filed in the probate court by Jack Rubens, an investigator for the public administrator of Cook county. The petition sets forth that a direct contempt had been com-

mitted by reason of the fact that the document purporting to be the last will and testament of James Thomas Kelly, deceased, was a forgery, and known to all of the persons connected therewith to be such. The petitioner further named the persons involved in the matter and prayed that the court might require the persons named to show cause why they should not be held in contempt of the probate court of Cook county, Illinois.

Upon the filing of this petition, the court proceeded in a summary manner, and heard the evidence of witnesses, who were interrogated, together with persons whose names appeared on the document as attesting witnesses, and this respondent, who as the attorney, filed with the clerk of the court the purported last will and testament of James Thomas Kelly, deceased, also presented the petition for proof of the will and letters testamentary in the estate of James Thomas Kelly, also known as James T. Kelly and as Thomas Kelly, deceased, on February 25, A. D. 1935, praying that the will be admitted to probate and that letters testamentary be issued after proper hearing and proof, and that the petition be set down for hearing on May 16, A. D. 1935.

At the conclusion of the hearing upon the matter of contempt, the court entered an order from which it appears that James Thomas Kelly departed this life on or about the 26th day of February, 1935; that Julius P. Waitches appeared in the probate court of Cook county, Illinois, on the 6th day of March, 1935, and presented a document purporting by its terms to be the last will and testament of James Thomas Kelly, deceased, which purported last will and testament bore the signature of Paul P. Zalinck and John Dailyde as witnesses thereto, and which said purported last will and testament named Bella Butman and Nicholas Radis as executors thereof; that at the time Julius P.

Waitches filed the purported last will and testament of James Thomas Kelly, deceased, he also presented to the court the verified petitions of Bella Butman and Nicholas Radis, the persons named in the will as executors thereof, asking that the will be admitted to probate and record and that letters testamentary issue to them in the premises.

The court thereupon found from the evidence heard in said cause that the document said to be the will of James Thomas Kelly, deceased, and which was presented to this court as such, and which bore the signatures of Paul P. Zalinck and John Dailyde as witnesses to the execution thereof, was not actually witnessed by these persons in the presence of James Thomas Kelly and in the presence of each other, as required by statute, but on the contrary the court found the fact to be that Paul P. Zalinck and John Dailyde affixed their signatures thereto after the death of James Thomas Kelly, the said John Dailyde having signed said document in the undertaking establishment maintained in the City of Chicago by the respondent, John J. Bagdonas, and the said Paul P. Zalinck having signed the document at his home after the death of James Thomas Kelly at the request and instance of the respondent, Nicholas Radis.

And the court entered a further finding from the evidence that all of the persons named above were fully advised of these facts prior to the date when the aforesaid Julius P. Waitches appeared in court and presented the last will and the application for its probate to the court, and that the persons herein named were scheming to perpetrate a fraud upon the court and intended to cause the court to admit to probate and record a document which Julius P. Waitches and the other respondents knew on said date was not the valid last will and testament of James Thomas Kelly, deceased.

Thereupon the court found the said respondent Julius P. Waitches, together with the other respondents in contempt of court, and they and each of them were sentenced to the county jail of Cook county for a period of one year from the date of the order.

The respondent makes the point that the probate court of Cook county erred in not discharging the respondent Julius P. Waitches on his sworn testimony in open court, denying his guilt. Upon an examination of the record filed by the respondent, as far as this respondent is concerned, we are unable to find that at any time during the hearing he objected to the admissibility of evidence of witnesses, on the theory that he had purged himself by his testimony as a witness at the hearing before the court. So, the question resolves itself into whether the hearing before the court was in the nature of a direct contempt which assailed the dignity of the court.

The attorneys who appear as *amicus curiae* invite our attention to the case of *People v. Whitlow,* 357 Ill. 34, wherein the court speaks of contempts committed in open court, or a contempt that is not in the presence of the court, and says: "Upon the commission of a contempt in open court, it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. . . . Misbehavior constituting a contempt committed in any place set apart for the use of any constituent part of the court, when it is in session, is deemed to have been committed in the presence of the court. . . . The order adjudging a contemner guilty of contempt committed in open court must set out the facts constituting the offense with sufficient particularity and certainty to show that the court was authorized to make the order. . . . In a case where the proceeding for contempt is for acts com-

mitted, not in the presence of the court and not in furtherance of the remedy sought or in enforcement of the court's orders or decrees but to maintain its authority and to uphold the administration of justice, if the party should answer denying the alleged wrongful acts, his answer is conclusive, extrinsic evidence may not be received to impeach it, and he is entitled to his discharge.''

In the case of *People v. Sheridan,* 349 Ill. 202, the court stated what would be considered a constituent part of the court and said that if the alleged conduct of the persons charged took place before such constituent part of the court, it was therefore in the presence of the court and a direct contempt. The court further said:

''The first contention of defendant is that the petition filed by the State's attorney was insufficient to charge him with conduct constituting contempt of court because it did not contain an allegation that the grand jury was investigating any complaint or charge of crime committed in Cook county or an allegation of the object of the questions asked defendant when he was before the grand jury. It is a sufficient answer to this contention to state that the alleged contemptuous conduct of defendant was before the grand jury, which was a constituent part of the criminal court, and his conduct was therefore in the presence of the court and if contemptuous was a direct contempt, and it was unnecessary to file a petition or make a formal charge by affidavit in order that the court might punish him for the contempt. (*People v. Cochrane,* 307 Ill. 126; *People v. Sherwin,* 334 id. 609.) Since it was not necessary or essential that the petition be filed it is unnecessary to consider whether the allegations of the petition that was filed were sufficient to charge conduct constituting contempt of court.''

From the order entered by the court, we find that the respondent in this case, together with the other respondents found guilty by the court, presented a document purporting to be the last will and testament of James Thomas Kelly, deceased, which document was not properly signed by two witnesses, and the witnesses who did sign were not witnesses to the execution thereof in the presence of James Thomas Kelly in his lifetime, and in the presence of each other, as required by law.

From the order the court further found that the appearance in court for the purpose of filing the purported last will and testament of James Thomas Kelly, deceased, was in furtherance of a scheme on the part of the respondents named to perpetrate a fraud, and that the contemptuous conduct of this respondent, together with the other named respondents, when the will was presented in the court for purposes of probate, took place in the presence of the court, and being a direct contempt, the judge of the probate court acted properly in exercising jurisdiction to pass upon the contemptuous acts of the respondents.

It is evident from the record that the court was imposed upon when this alleged last will and testament of James Thomas Kelly, deceased, was presented.

The only real question involved in this proceeding so far as this particular respondent before us is concerned is whether the order is sufficient in its finding of fact to sustain the court's position in finding this respondent guilty.

It appears from the order that Julius P. Waitches appeared in the probate court on the day in question and filed with the clerk of the court a document purporting to be by its terms the last will and testament of James Thomas Kelly, deceased, and presented it for probate, together with a verified petition by Bella Butman and Nicholas Radis, who were named in the will

as executors, asking that the will be admitted to probate and record, and that letters testamentary issue to the petitioners named.

It is clear from the order that when this respondent, Julius P. Waitches, appeared in court and presented the alleged last will and testament, the same was prepared as a part of and in furtherance of a scheme and design on the part of the respondents named to perpetrate a fraud upon the court. That, in our opinion, would of itself be sufficient, from all the facts and circumstances as they appear in the record, to justify the court's order.

The question is called to our attention that this prosecution was founded upon a petition of one Jack Rubens, and was not supported by a sufficient oath or affidavit. If we turn to the case of *People v. Sheridan,* 349 Ill. 202, we will find, upon a like question, this statement by the court: "Since it was not necessary or essential that the petition be filed it is unnecessary to consider whether the allegations of the petition that was filed were sufficient to charge conduct constituting contempt of court."

In other words, the hearing being before the court, it was competent for the judge to consider the contemptuous conduct of the respondent before the court, as well as in the clerk's office—a constituent part of the probate court—and punish him for direct contempt without the filing of a petition or the making of a formal charge, supported by an affidavit.

Since the question arises largely upon the order of the court, we have examined the suggestions made by this respondent, and are of the opinion that there is sufficient in the order itself to justify the court in finding him guilty and in fixing his punishment.

From an examination of the record filed in this court, this respondent was not only present in court on the days when evidence was heard, but was also

present when the order complained of was entered by the court.

In our opinion the court acted properly, and there is no error in the record such as would justify a reversal of the order.

For the reasons stated in this opinion the order of the probate court is affirmed.

*Order affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.