(No. 24280.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JULIUS P. WAITCHES, Plaintiff in Error.

*Opinion filed February 16, 1938—Rehearing denied April 6, 1938.*

ODE L. RANKIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, BLAIR L. VARNES, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

The defendant, Julius P. Waitches, was indicted in the criminal court of Cook county, with several other persons, for conspiracy, some of the counts charging the object of the unlawful conspiracy to be a forging of the purported will of James Thomas Kelly, to the injury of the estate of said James Thomas Kelly, and with the intent to defraud that estate, and two other counts charging a conspiracy to do an act injurious to the administration of public justice by the same means. The defendant was tried alone, and his conviction having been sustained by the Appellate Court, he prosecutes this writ of error.

The facts in this case have been so often and fully stated in the published reports that it is unnecessary to repeat them here. For these facts reference is made to *In re Estate of Kelly,* 285 Ill. App. 143, affirmed in 365 Ill. 174; *People v. Waitches,* 290 Ill. App. 402. In this court, and on this writ of error, the only substantial question raised by the defendant, and the only one which caused the Appellate Court any difficulty, concerns the sufficiency of the indictment, which was challenged by motion to quash and by motion in arrest of judgment. Inasmuch as one good count will sustain an indictment where, as in this case, there was a general verdict of guilty, it will be unnecessary to set out the particular objections to each of the various counts in order to determine whether or not all of them are sufficient. If any one of them is sufficiently technical it is all that is required. *People v. Donahoe,* 279 Ill. 411.

Defendant's entire position centers around his contention that the estate of a deceased person is neither a natural nor an artificial entity, and that those counts charging an

attempt to defraud an estate are void; that they come within the rule that indictments charging offenses against person or property must allege ownership of the property, and a person or entity capable of owning the same. On this point cases are cited by the defendant and by the People showing a wide divergence of opinion in the courts of various States as to whether or not an estate is such an entity. We find it unnecessary to discuss these authorities or decide this point.

Examining the thirteenth count, we find that it charges a conspiracy to corruptly do an illegal act, injurious to the administration of public justice, by obtaining possession and ownership of a large amount of money, etc., which belonged to James Thomas Kelly, deceased, at the time of his death, and to do this by forging a false will of James Thomas Kelly and to procure the probate thereof, and to present to the probate court false and perjured testimony to prove the will, and to corruptly suborn such testimony. This count falls directly within the rules laid down by the Supreme Court of the United States in *Williamson* v. *United States*, 207 U. S. 425. In that case the defendant was indicted, with others, for conspiracy to commit the crime of subornation of perjury in proceedings for the purchase of public land under the Timber and Stone act. It was charged that there was an unlawful combination entered into on a certain date for the purpose of suborning a large number of unnamed persons to go before a United States Commissioner in Oregon, and, in proceedings for the entry and purchase of land, to make oath that the lands were not being purchased on speculation, but in good faith to be appropriated to the use and benefit of those persons respectively, and that they had not directly or indirectly made any agreement with any other person by which the titles which they might procure should enure, in whole or in part, to the benefit of any person except themselves, when, in truth and in fact, as each of the said persons would then

well know, and as (the defendants) would then well know, such persons would be applying to purchase such lands on speculation, and not in good faith to appropriate such lands to their own use and would have made contracts with (the defendants) by which their titles would enure to the benefit of the defendants. There were further allegations as to the defendants being engaged in sheep raising, and to the effect that the matters to be sworn to by the unnamed persons to be suborned thereafter taking an oath before a United States Commissioner.

The indictment in that case was attacked upon precisely the same grounds as the one before us. It was there insisted that the indictment was fatally defective by reason of an omission to directly particularize various elements claimed to be essential to constitute the offense of perjury, and other elements necessary to be averred in respect of the alleged suborners. These arguments were based upon an assumption that an indictment charging conspiracy to suborn perjury must describe not only the conspiracy but also, with technical precision, state all the elements essential to the commission of the crimes of subornation of perjury and perjury, which, it was shown, was not done in the indictment under consideration. Similarly, in the case now before us, it is argued that it was necessary, in this indictment, to charge the names of the persons to be defrauded and to describe the property to be unlawfully obtained as a fruit of the conspiracy.

The United States Supreme Court held the indictment in the *Williamson case* sufficient. In the opinion it is said: "But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy. * * * These allegations plainly import, and they are susceptible of no other construction, than that the unlawful agreement contemplated a future solicitation of

individuals to enter lands, who in so doing would necessarily knowingly state and subscribe under oath material false statements as to their purpose in respect to entering the land, etc., and known to be such by the conspirators. There is no reason to infer that the details of the unlawful conspiracy and agreement are not fully stated in the indictment, and it may therefore be assumed that the persons who were to be suborned, and the time and place of such subornation, had not been determined at the time of the conspiracy, except as might be inferred from a purpose to procure the persons to be suborned to come before the United States Commissioner for the district of Oregon, named in the indictment. * * * The criminality of the conspiracy charged consisted in the unlawful agreement to compass a criminal purpose, [and] the indictment we think sufficiently set forth such purpose."

As the United States Supreme Court pointed out, the gist of the crime of conspiracy is the unlawful agreement, and the object for which it was formed need be stated only with certainty to a common intent. The indictment in the present case fully informed the defendant of the nature and cause of the accusation against him and is sufficiently definite and certain to protect him from further prosecution for the same offense. It has thus met the two basic requirements of an indictment or information, and the court did not err in refusing to quash it.

Other questions raised by the defendant have been fully and properly treated in the opinion of the Appellate Court. They concern questions of instructions and the admission of evidence. Defendant was proved guilty by the evidence for the People and his testimony, in his own behalf, only made certainty more certain. He has had a fair trial on a sufficient indictment, and the judgment will not be disturbed.

*Judgment affirmed.*