(No. 15048.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ROBERT J. COCHRANE, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CONTEMPT—*when a witness may be punished for contempt without affidavit or process.* Where a witness refuses to answer questions during an investigation by the grand jury and again refuses to answer the same questions in open court for the sole reason that the subject of the inquiry is confidential between himself and his employer, the court may adjudge him guilty of contempt, and he may be punished by fine or imprisonment, or both, without any preliminary affidavit, process or interrogatory.

2. SAME—*when contempt is committed in presence of court.* A contempt committed in any place set apart for the use of any constituent part of the court during the session of the court is committed in the presence of the court, and any conduct constituting a contempt in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law is a contempt committed in the immediate presence of the court.

3. SAME—*what constitutes contempt of court.* Any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity is a contempt.

4. SAME—*when witness cannot refuse to answer on ground of incrimination.* A witness cannot refuse to answer a question because it is likely to incriminate another person, and the head of a private detective agency cannot refuse to answer questions during an investigation by the grand jury upon the sole ground that the subject of the inquiry is confidential between himself and his client.

5. SAME—*witness is not entitled to have the advice of counsel before answering questions.* A witness testifying before a grand jury or in a criminal prosecution is not entitled to have an attorney to advise him whether he shall answer certain questions or to have proceedings suspended until he can find and consult an attorney, and where he persists in refusing to answer certain questions for no valid reason he may be adjudged guilty of contempt in obstructing the administration of justice.

6. SAME—*witness adjudged guilty of contempt cannot, on review, question organization of court or grand jury.* Where a witness has refused to answer questions during an investigation by the grand jury and again refuses to answer the same questions in open court and is adjudged guilty of contempt, he cannot, on a writ of

error, be permitted to try the title of the judge to his office, the organization of the court, or raise any question concerning the legality of the grand jury.

7. COURTS—*the grand jury is a part of the court.* The grand jury is a constituent part of every court having general criminal jurisdiction.

8. SAME—*court may call a special grand jury.* A court having general criminal jurisdiction has general common law powers, and may call a special grand jury, if necessary, independently of the statute.

THOMPSON, C. J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

LEFORGEE, SCHROEDER & TATE, (GEORGE W. BLACK, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, and EDWARD C. FITCH, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The criminal court of Cook county adjudged the plaintiff in error, Robert J. Cochrane, guilty of contempt of the court committed in open court in refusing to answer interrogatories which he had refused to answer before the grand jury and again refused in open court to answer, and committed him to the county jail for a term of ten days or until released by due process of law. He sued out a writ of error from this court and has assigned errors upon the record questioning the legality and validity of the judgment upon constitutional and other grounds.

The record returned in obedience to the writ shows the following facts: On September 14, 1922, the grand jury, the State's attorney and the plaintiff in error being present in open court, the grand jurors stated that on that day the plaintiff in error had been and still was a witness testifying

before the grand jury in an investigation in relation to alleged violations of the criminal law by members of the board of education of the city of Chicago and former members and employees of said board and persons and firms doing business with the board and persons and firms who theretofore had done business with the board and persons acting in criminal concert with any of said persons or firms; that the plaintiff in error, having been duly sworn as a witness, testified that he was president of the Cochrane Secret Service Company, located at room 301, No. 30 North LaSalle street, in Chicago; that the business of the corporation consisted of investigating and reporting on individuals, and within the last couple of months he had an application to investigate Carl Baumann, one of the grand jurors; that the plaintiff in error refused to state who employed the firm or corporation to investigate Baumann or where he met his client because he would not divulge the confidence of his employer, which would be a betrayal of confidence, and that he had no other reason for refusing to answer except that it was a confidential matter. The grand jurors moved for an order that the plaintiff in error should show cause why he should not answer the interrogatories which he had refused to answer, and such an order was entered. Thereupon the plaintiff in error was again duly sworn and stated to the court that he would like to consult counsel and be in court any time that the court directed. The court did not assent to the proposal but informed plaintiff in error that it was for him to decide whether he would answer the questions or not, and that the court and jury were awaiting his answer to determine whether he would or would not answer the questions. The questions put to him in the grand jury room were read to him and were as stated by the grand jury, and he said that the record was correct. The court asked him the same questions which he had refused to answer in the grand jury room and he refused to answer, stating several times that he thought he ought to be privileged

to consult counsel. The court advised him that a witness called to the stand in court and asked a question which did not tend to incriminate had no right to go away and employ counsel and come back some other time. He admitted that the questions read to him were asked of him before the grand jury and that he had refused to answer each question, and he again in the presence of the court refused to answer, and stated that if permitted to return with the grand jury to the grand jury room he would not answer the questions otherwise than by refusing as he had before refused.

The first assignment of error is that the criminal court was without jurisdiction to enter its order and judgment, and under this assignment it is first said that the contempt, being criminal in its nature, must be brought and prosecuted in the name of the People. The record shows that the proceeding was in the name of the People, and the law in that respect was not disregarded.

It is next said, under the same assignment, that plaintiff in error was entitled to his discharge because there was no valid process, as required by section 33 of article 6 of the constitution, which requires that all process shall run in the name of the People of the State of Illinois, and in the argument it is contended that the plaintiff in error was tried, convicted and deprived of liberty without due process of law and in violation of his constitutional and statutory rights because he was brought into court without the formality of a charge against him, with an opportunity to be heard in answer to the charge. The reliance of counsel to support that proposition is on the decision in the case of *Ex parte Hedden*, 28 Nev. 352. In that case the grand jury submitted to the district court a report that Hedden was called before it and refused to answer when he received certain books from A. J. Lyon, and being ordered to produce the books and papers before the grand jury he declined to comply with the order. The district court committed him until he should comply with the order of the court to produce

307–9

to the grand jury the books and papers in question. The court held that although the grand jury, when in session and in attendance on business connected with the court, is an adjunct or appendage of the court, it was not a part of the court within the contemplation of the Nevada statute so as to authorize a judge summarily to punish an act committed before the grand jury as an act committed in the presence of the court, and it was necessary to proceed against the offender by affidavit and give him an opportunity to show cause why he should not be punished. In that decision the court applied the established rule that where an alleged contempt is committed outside of the presence of the court the party accused is entitled to be informed of the nature and cause of the accusation against him and an opportunity to defend, but was of the opinion that the act committed before a grand jury in refusing to deliver the books and papers was not in the presence of the court. Assuming the decision to be correct under the statute the decision does not apply to this case. The plaintiff in error being a witness before the grand jury and refusing to answer questions, he, with the grand jury and State's attorney, went before the court and was given an opportunity to say whether he would answer the questions, and refused. He stood in open defiance of the court and of the authority of a judicial tribunal created and existing by virtue of the constitution and laws of the State for the administration and enforcement of the criminal law. He had a full and impartial hearing before the court, and his refusal was in the presence of the court and punishable in a summary way by fine or imprisonment, or both, without any preliminary affidavit, process or interrogatory. (*Tolman* v. *Jones,* 114 Ill. 147; Rapalje on Contempts, sec. 93; 13 Corpus Juris, 63.) But unless the Nevada statute abolished the rule and practice the decision was not in accordance with authority. In *People* v. *Barrett,* 56 Hun, 351, where a newspaper reporter concealed himself in a jury room during the deliber-

ations of the jury, the court said: "The judge is not the court, the court room is not the court, the jury room is not the court, nor is the petit jury the court, but the court consists of all these combined, and wherever any constituent part of the court is engaged in the prosecution of the business of the court according to law there the court is present." In *Savin, Petitioner,* 131 U. S. 267, it was held that an attempt to bribe a witness committed in a room used by witnesses and also in a hall of the court house was a contempt committed in the presence of the court. In *McCarthy v. Hugo,* 82 Conn. 262, a defendant who was being prosecuted for violation of the liquor law took from the lawyer's table in the court room a bottle of whisky alleged to have been sold by him and which had been produced in court as an exhibit and left in its place a bottle of ginger ale during a recess of the court and while the judge was in his retiring room, and his act was held to constitute a criminal contempt in the presence of the court. The grand jury is a constituent part of every court having general criminal jurisdiction. (*Boone* v. *People,* 148 Ill. 440; *People* v. *McCauley,* 256 id. 504.) A contempt committed in any place set apart for the use of any constituent part of the court during the session of the court is committed in the presence of the court. Any conduct constituting a contempt in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law is a contempt committed in the immediate view and presence of the court. (6 R. C. L. 492.) Presence of the court means in the ocular view of the court or where the court has direct knowledge of the contempt, and even if the plaintiff in error had been adjudged guilty of contempt for his refusal to answer questions before the grand jury, it would have been in the presence of the court. These statements of the law dispose of most of the alleged errors.

Counsel say that no contempt of the court was committed, but that statement requires no further comment than

to say that it is utterly unfounded. Any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity is a contempt.

Next it is said that plaintiff in error was deprived of the constitutional right guaranteed by section 10 of article 2 of the constitution, providing no person shall be compelled in any criminal case to give evidence against himself. When he was inquired of whether his answer would incriminate him or tend to incriminate him, he said that his only reason for refusing to answer was that he would not divulge the confidence of his client. If that meant anything concerning incriminating anybody it referred to the client, and no witness can refuse to answer because it will incriminate some other person, which is the very purpose of investigations before a grand jury.

It is next argued that a right of the plaintiff in error was denied by refusing him an opportunity to consult with and be represented by counsel in the hearing before the court. To sustain that proposition counsel cite section 9 of article 2 of the constitution, guaranteeing that in all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, and the provision of the Criminal Code that every person charged with crime shall be allowed counsel. Plaintiff in error did not come within either, because he was not being prosecuted for crime but his relation to the investigation was as a witness. One occupying that relation to a criminal prosecution is not entitled to have an attorney at his elbow to advise him whether he shall answer a question or to have proceedings suspended until he can find and consult an attorney. Plaintiff in error never intimated that he would answer the questions if he was advised by counsel that it was his duty, and it is perfectly apparent that his only object was to obtain advice to aid him in obstructing the administration of justice.

Finally it is urged that the grand jury in its proceedings was illegal and void for the reason that the grand jury had been summoned and organized for the August term of the criminal court, and not having completed its investigation of alleged violations of the criminal law by members of the board of education and others, the court ordered the grand jury to continue its investigation to the September term.   If that had been an erroneous order it would not have been without jurisdiction, and the grand jury was a grand jury in fact, performing the functions of a grand jury as a part of the court.   The refusal of the plaintiff in error to testify was not on any ground of the illegality of the order, and the only attempt to raise that question is upon this writ of error.   If this grand jury had indicted any person and a trial resulted in a conviction, the convicted one could not raise the question of the legality of the grand jury without a challenge to the array or motion to quash the indictment on that particular ground.   (*Stone* v. *People,* 2 Scam. 326; *Barron* v. *People,* 73 Ill. 256; *Sullivan* v. *People,* 156 id. 94; *People* v. *Nall,* 242 id. 284.)   The court, in addition to the statute, had general common law powers, and power to call a special grand jury, if necessary, independently of the statute, (*People* v. *McCauley, supra,*) and a witness called to testify before a court would not on a writ of error be permitted to try the title of the judge to his office, the organization of the court, or any question concerning the legality of the grand jury.

The judgment is affirmed.          *Judgment affirmed.*

Mr. CHIEF JUSTICE THOMPSON, dissenting.