(No. 23736.—

In re Estate of James Thomas Kelly, Deceased.—(The People of the State of Illinois, Defendant in Error, *vs.* Julius P. Waitches, Plaintiff in Error.)

*Opinion filed December 10, 1936—Rehearing denied Feb. 4, 1937.*

ODE L. RANKIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE, and MELVIN S. REMBE, of counsel,) for the People.

LEVINSON, BECKER, PEEBLES & SWIREN, (DON M. PEEBLES, of counsel,) *amici curiæ.*

Mr. JUSTICE WILSON delivered the opinion of the court:

Julius P. Waitches, an attorney, John J. Bagdonas, an undertaker, Nicholas Radis, Paul P. Zalinck, John Dailyde and Bella Butman were adjudged guilty of contempt of court by the probate court of Cook county and sentenced to imprisonment in the county jail for the period of one year. Upon a writ of error prosecuted by Waitches the Appellate Court for the First District affirmed the order as to him. (*In re Estate of Kelly,* 285 Ill. App. 143.) He

has since prosecuted a writ of error from this court and the record is submitted for a further review.

From the record it appears that James Thomas Kelly, a resident of Chicago, died on February 26, 1935. Eight days later, on March 6, 1935, Waitches filed an application for letters testamentary in the probate court of Cook county. This application was signed by Bella Butman and Radis, and their signatures were acknowledged before the clerk of the court. Waitches appeared on the same day before the Hon. John F. O'Connell, judge of the probate court, and exhibited to him a document purporting to be Kelly's last will and testament. This alleged will bore the signatures of Zalinck and Dailyde as attesting witnesses and is the document filed on March 6 as Kelly's will. Radis and Mrs. Butman were named executor and executrix. The latter was also named as residuary legatee. Two other provisions of the will merit mention. One section provided: "$4500 to go to J. J. Bagdonas & Company for favors rendered to me personally and in full for all funeral charges." By another section Waitches was named as attorney for the estate, and it fixed his compensation for legal services to be rendered in that capacity. Waitches and the other five persons previously named were brought into Judge O'Connell's court room on the following morning, namely, March 7. At the opening of court a verified petition of a general investigator in the employ of the public administrator of Cook county was presented to Judge O'Connell, addressed to him as judge of the probate court. The petition was read in open court and filed. By it the charge was made that certain acts of the six defendants constituted a direct contempt against the court. In particular, the petition alleged that the document presented to the court by Waitches on March 6 was not the last will and testament of Kelly; that the signatures of Zalinck and Dailyde as attesting witnesses were affixed thereto after Kelly's death, and that each person named in the petition knew, not only

at the time of presentation but prior thereto, that the document was a forgery. The petition asked the court to require the defendants to show cause why they should not be held in contempt of court. Upon receiving the petition Judge O'Connell proceeded to hear the testimony of the six persons named in the petition as well as the testimony of other witnesses. Although they were advised by the court that they had a constitutional right to refuse to answer any questions put to them upon the hearing on the charge of contempt in connection with the attempt to probate the will, the record shows that the defendants did not avail themselves of this privilege. Waitches, in particular, professed his willingness to testify. Each respondent was interrogated by the probate judge and by counsel for the public administrator. No useful purpose can be served by reviewing their testimony, which is of a sordid and disgraceful character. It suffices to state that the evidence, so far as Waitches is concerned, sufficiently demonstrates he knew that Zalinck and Dailyde attested the purported will after Kelly's death, and that he participated in a deliberate attempt to cause the probate court to admit the spurious will to probate and to issue letters testamentary.

The order of commitment, after reference to the petition charging that the defendants had committed acts constituting contempt of the probate court and the fact that Judge O'Connell heard the six defendants testify in their own behalf with respect to the matters set forth in the petition, discloses he found that Kelly died on February 26, 1935; that Waitches personally appeared in the probate court on March 6, 1935, bearing a document purporting to be Kelly's will; that it bore the signatures of Zalinck and Dailyde as witnesses and named Radis and Mrs. Butman as executor and executrix; that at the time of filing the purported will Waitches also presented to the court the verified petition of Radis and Mrs. Butman asking that the alleged will be admitted to probate and record and that letters tes-

tamentary issue to them; that Zalinck and Dailyde, whose names appeared as witnesses, did not actually witness the execution of the will in the presence of Kelly and in the presence of each other, but, on the contrary, that both Zalinck and Dailyde affixed their names to the document after Kelly's death, Zalinck having signed it at his own home at the request of and in the presence of Radis, and Dailyde having signed it in an undertaking establishment maintained by Bagdonas, at a time when Kelly was dead and his body in a casket at that place; that the defendants were fully advised of these facts prior to March 6, 1935, when Waitches appeared in the probate court and presented the will and the application for its probate, and that not only the will, but also the petition for its probate, were prepared as a part of and in furtherance of a conspiracy on the part of the defendants to perpetrate a fraud upon the court by inducing it to admit to probate and record a document which all of them knew on the day named was not the valid last will and testament of the decedent. The order of commitment concludes that the conduct of the defendants was in derogation of the dignity of the court and of its orderly processes, and that because of such conduct the defendants were in contempt of court.

To reverse the judgment of the Appellate Court and the order of the probate court Waitches contends that an indirect contempt was charged in the petition upon which the proceeding originated, and that, in consequence, he should have been discharged upon his oral answer denying the charges against him. The contention that the contempt was indirect cannot be sustained. Conduct in the presence of the court which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect, constitutes a direct contempt and is punishable as such. (*People* v. *Sherwin,* 334 Ill. 609; *People* v. *Cochrane,* 307 id. 126; *People* v. *Gard,* 259 id. 238; *Dahnke* v. *People,* 168 id. 102; *Stuart*

v. *People*, 3 Scam. 395.) Upon the commission of a direct contempt in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. (*Cooke* v. *United States*, 267 U. S. 517; *Savin, Petitioner*, 131 id. 267; *Ex parte Terry*, 128 id. 289; *People* v. *Whitlow*, 357 Ill. 34; *People* v. *Andalman*, 346 id. 149.) All direct contempts, however, are not committed in open court in the ocular view of the presiding judge. Misbehavior constituting a contempt committed in any place set apart for the use of any constituent part of the court when it is in session is deemed to have been committed in the presence of the court and if contemptuous is a direct contempt. *Savin, Petitioner, supra; People* v. *Whitlow, supra; People* v. *Sheridan*, 349 Ill. 202; *People* v. *Andalman, supra; People* v. *Cochrane, supra.*

The order finding Waitches guilty of contempt sets out the facts constituting the offense with sufficient particularity and certainty to show that the court was authorized to make the order attacked. The summary of and the conclusions drawn from the evidence disclose that on March 6, 1935, while the probate court of Cook county was in session, Waitches attempted to perpetrate a fraud upon that court. The only conclusion which can be drawn from the flagrant misbehavior of this defendant is that it was deliberately calculated to impede the orderly administration of justice. His conduct assailed the dignity and authority of the probate court, and it possessed the inherent power to punish an offender for such contempt. (*People* v. *Seymour*, 272 Ill. 295; *People* v. *Wilson*, 64 id. 195; *Stuart* v. *People, supra; Clark* v. *People, Breese*, 340.) Although the contemptuous act of knowingly filing the spurious will and the application for its probate was not committed in the immediate presence of the judge, it did occur in a place set apart for the use of a constituent part of the court. The

fraud attempted to be perpetrated was not directed against the clerk of the court, who merely received the document for filing, but against the court itself. Furthermore, the evidence upon which the order of commitment rests shows, and Waitches admitted, that he personally presented the false will to the presiding judge in his court room for the purpose of inducing him to enter orders making that document a part of the records of the probate court on the same day he caused it to be filed in the clerk's office. Apparently the document itself was of such a character that it aroused the court's suspicion, and the investigation which ensued disclosed an attempt to pervert the process of the court. Since the contempt here occurred in the presence of a necessary constituent part of the court instead of in the immediate presence of the judge, extrinsic evidence to substantiate the charge was essential. Obviously, in such a situation the court itself may endeavor to maintain the purity and integrity of its own judicial process and may resort to extraneous evidence to accomplish that purpose. It necessarily follows that the sworn testimony of the defendant Waitches was not alone sufficient to purge him of the charge of contempt when his guilt was so clearly established by the testimony of other witnesses. Under these circumstances no duty rested upon the court to believe the testimony of Waitches. On the other hand, the judge was fully warranted in rejecting the denial and in refusing to discharge the defendant.

*People* v. *Andalman, supra,* closely parallels the case at bar. In that case Andalman was ordered by a judge of the superior court of Cook county to refrain from filing certain papers, and the latter directed the minute clerk in his court room not to receive them if presented to him. Andalman made no attempt to file the papers in the court room, located on the eighth floor of the county building, but instead proceeded to the office of the clerk of the superior court on the fourth floor and filed them. When the trial judge learned that these papers had been filed in the

clerk's office he entered an order that Andalman show cause why he should not be adjudged in contempt of court. The defendant submitted a written answer, which the court refused to consider on the ground that the contempt was direct and the answer therefore improper. The contention was made on review, as here, that the contempt of court, if any, was an indirect contempt and that the rules governing such contempts should apply. In disposing adversely to this contention this court said: "Any conduct constituting a contempt in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law is a contempt committed in the immediate presence of the court." In the *Andalman case,* as in the present case, the contempt consisted of filing papers in the office of the clerk of the court. It was accordingly necessary for the trial judge in that case, as in this case, to be informed that the contemner had filed the papers in question in the clerk's office and that the defendant personally filed them. Neither contempt was of such a character as to be apparent to the ocular or auditory senses of the judge of the court. Manifestly, if the contempt committed in the office of the clerk of the superior court was a direct contempt, the contemptuous conduct of Waitches in the office of the clerk of the probate court was likewise direct. *Savin, Petitioner, supra, Ex parte Terry, supra, People* v. *Sheridan, supra, People* v. *Sherwin, supra,* and *People* v. *Cochrane, supra,* are analogous to this case and support our conclusion.

To obtain a reversal, however, the defendant, Waitches, has recourse to several decisions of this court. In *People* v. *Spain,* 307 Ill. 283, the alleged contempt was based upon Spain's refusal to answer certain questions before a grand jury when interrogated in an effort to establish the existence of a fund believed to have been used for bribery. Spain declined to answer the questions propounded to him on the ground that his answers might tend to incriminate him.

This court, on review, held that the constitutional inhibitions against self-incrimination were applicable in contempt proceedings and that the refusal to answer such questions was not contemptuous. In short, no contempt, either direct or constructive, had been committed. Obviously, the *Spain case* is not parallel with the present case, where the order of commitment, and the proof upon which it was based, show a scandalous contempt in the presence of the court.

Reliance is also placed upon *People v. McLaughlin,* 334 Ill. 354. The defendant in that case was charged by an information with having attempted, outside of court, by coercion and intimidation, to induce a witness not to tell the truth. The alleged contemptuous acts took place in a barber shop a considerable distance from the criminal court. It was stated that under such circumstances an answer denying the acts charged purged the defendant of the alleged contempt.

*People v. McDonald,* 314 Ill. 548, is cited. In that case an assault upon a litigant, committed in the county building, in the corridor outside of a court room and about fifty feet therefrom, and so far away that it did not even tend to interrupt the court's proceedings, was declared not to have been committed in the presence of the· court. The defendant was accordingly held to have been entitled to his discharge upon his sworn denial of commission of the acts charged.

The alleged contempt in *People v. Whitlow, supra,* consisted of an assault upon an attorney in a courtyard on his way to court. It does not follow that because an assault upon a person either in a courtyard adjacent to a court house or in a corridor of the building (*People v. McDonald, supra,*) is not committed within the presence of the court, an act constituting contempt committed in a necessary constituent part of the court, such as the office of the

clerk, is likewise not committed in the presence of the court and punishable as a direct contempt.

Complaint is made that an information by a private individual, such as an employee of the public administrator, made on information and belief, does not vest the probate court with jurisdiction of the subject matter. The contempt charged and proved was direct. In such cases a formal information or petition is unnecessary, and hence the sufficiency of the petition assailed is immaterial. (*People* v. *Andalman, supra; People* v. *Sherwin, supra; People* v. *Cochrane, supra.*) Answering a similar contention in *People* v. *Sheridan, supra,* this court observed: "Since it was not necessary or essential that the petition be filed it is unnecessary to consider whether the allegations of the petition that was filed were sufficient to charge conduct constituting contempt of court."

The defendant also insists that the sentence against him is void because the record does not recite any jurisdiction over him and does not show that he was present when sentence was passed. The court had judicial knowledge of the contemptuous act from the record. His presence at the time the contempt was committed conferred jurisdiction. The record shows that Waitches voluntarily testified in his own behalf after having been reminded of his constitutional privilege to refuse to testify. He admitted having presented the will for probate. This admission was in the presence of the functioning court and punishable in a summary manner. He was present when the order of commitment was entered on March 7 as well as on the next day when he personally moved to vacate the contempt, in arrest of judgment, to stay the *mittimus* and to appeal. It is manifest that the record affirmatively discloses the presence of Waitches throughout the proceeding.

The defendant makes the further contention that he should have been discharged because the record shows nothing incriminating or contemptuous on his part. It is

argued that since his answers to the interrogatories propounded by the court and by counsel denied any implications of wrongdoing the charge was not proved, irrespective of whether it be deemed a direct or an indirect contempt. He admitted filing the spurious will and the verified petition seeking letters testamentary. The evidence upon which the order of commitment was based amply shows that Waitches had knowledge of the sordid circumstances attending the execution of the false will despite his protestations to the contrary. His testimony that he knew nothing about the preparation of the forged will is negatived by the fact that he was designated in the will as the person to handle its probate and his compensation therefor fixed in that document. The statement that there was nothing wrong *per se* in the filing of the will for probate is utterly unfounded. It cannot be said that the filing of a spurious will with knowledge of its falsity and an application for its probate are matters of right and not contemptuous. When the defendant, Waitches, presented the purported will to the court he did so as an officer of the court. Courts should require that practicing attorneys have a higher regard for the administration of justice than that which is required of the layman. Utter disregard of attorneys as to the truth or falsity of matters contained in papers and documents presented to courts warrants condemnation as unethical and contemptuous. The disclaimer of irregularity in or fraud surrounding the will simply does not square with the circumstances adduced by the evidence. If the acts of a contemner are inconsistent with the alleged intention, and if the acts charged and proved or not denied amount to a contempt, the answer averring the party charged intended no contempt will not purge him. *People* v. *Sherwin, supra; People* v. *Burr,* 316 Ill. 166.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*