(Nos. 30822, 30823, 30824.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERNEST A. HARRISON *et al.,* Plaintiffs in Error.

*Opinion filed May 19, 1949.*

WILLIAM L. KELLEY, of Chicago, (HUGH M. MATCHETT, of counsel,) for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (GORDON B. NASH, MELVIN F. WINGERSKY, GEORGE B. DUGGAN, JACOB L. SHEER, and JOHN J. COGAN, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Three separate judgments entered by the superior court of Cook County found Ernest A. Harrison, Jeanette Harrison, and Joseph Harrison guilty of direct criminal contempt of that court because of alleged perjured testimony given during a divorce proceeding. Ernest Harrison was sentenced to thirty days in the county jail, while the other two named were given sentences of ten days. Each has

sued out a separate writ of error to this court to review the judgment of the trial court, which writs have been consolidated and will be reviewed in this opinion.

The historical facts, which are not in dispute, show that Ernest A. Harrison sued his wife Maria Harrison for a divorce on the ground of extreme and repeated cruelty, one of which such acts was alleged to have taken place on July 10, 1947. Service was by publication; no appearance was filed by defendant; and on March 17, 1948, a default decree was entered granting the divorce. On March 25, 1948, defendant, Maria Harrison, filed a verified petition to set aside the decree and asked for leave to defend. To this a verified answer was filed. On April 19, 1948, an order was entered by agreement of the parties setting aside the decree and giving defendant leave to defend. On April 21, 1948, Maria filed her answer to the complaint for divorce and a counterclaim for separate maintenance. On May 14, 1948, as a result of unverified petitions filed by the State's Attorney, an order was entered, by the judge before whom the divorce proceeding had been heard, for a rule to show cause for direct contempt, naming therein the plaintiffs in error now before this court. Plaintiffs in error filed separate motions to quash the petitions on numerous grounds which alleged violations of the Federal and State constitutions, various statutes, and the common law. In addition, a jury demand predicated on constitutional grounds and a written objection to the receipt of any testimony were filed. A hearing was had on each point raised and they were denied *in toto.* Plaintiffs in error filed no answer nor did they testify or introduce testimony at the hearing held pursuant to the petitions for rule to show cause.

To retrogress for an instant, the record shows that on the divorce proceeding the three plaintiffs in error testified to a certain act of cruelty allegedly committed by Maria Harrison against Ernest A. Harrison on July 10, 1947, at

their home. At the hearing on the contempt proceedings, Margery Quandt, a nurse from Wesley Memorial Hospital, who was the medical records librarian, was permitted to testify that Maria Harrison was under observation in that hospital on July 10, 1947, and that she was a patient there continuously from June 19, 1947, until August 16, 1947. Records substantiating this were also introduced. Maria Harrison, who also testified, stated that she was the wife of Ernest A. Harrison; that she had been confined to the hospital on July 10, 1947; and that she did not, on that date, commit any act of cruelty against her husband. The trial court subsequently entered a written order in regard to each plaintiff in error, which recited the testimony of each witness in the divorce proceeding and each witness at the contempt hearing, and stated that based on the testimony at the contempt hearing, the court found the plaintiffs in error guilty of direct criminal contempt for uttering false and perjured testimony, and passed sentence upon them. The same judge presided at all proceedings.

The first issue here presented is whether the alleged false swearing of plaintiffs in error in the divorce proceeding is punishable as direct contempt. Secondly, we are asked to determine whether the procedure followed by the trial court, under the circumstances, denied plaintiffs in error due process of law. Although our jurisdiction has not been directly challenged, it should be noted that unlike the record in *People* v. *Siegal,* 400 Ill. 208, the record in this case indicates that fairly debatable constitutional questions were raised and passed upon by the trial court. They have been properly preserved for review, and, under such circumstances, a writ of error to review a judgment of conviction for criminal contempt may properly be sued out of this court. *People* v. *Seymour,* 272 Ill. 295; *People* v. *Siegal,* 400 Ill. 208.

A direct criminal contempt has been defined by this court as being one which takes place in the very presence of the

judge, making all of the elements of the offense matters within his own personal knowledge. (*People* v. *Sherwin*, 353 Ill. 525; *People* v. *Berof*, 367 Ill. 454.) In *People* v. *Gard*, 259 Ill. 238, the principle was broadly stated that conduct in the presence of the court, which tends directly to obstruct and prevent the administration of justice in the conventional way and according to the requirements of the constitution and the statutes, is a direct contempt and punishable as such. (See, also, *People* v. *Seymour*, 272 Ill. 295.) The application of this principle has, of course, been limited and qualified by our decisions in the *Sherwin* and *Berof* *cases*. Acts committed physically outside the presence of the judge, but admitted in open court, have also been held to constitute direct contempt. In *People* v. *Cochrane*, 307 Ill. 126, the contempt was committed before the grand jury, out of the presence of the judge, and it was necessary to question the defendant to determine whether he was guilty of contempt. In *People* v. *Andalman*, 346 Ill. 149, the contemptuous act was filing papers with the clerk of the court contrary to the court's orders. In the case of *In re Estate of Kelly*, 365 Ill. 174, a spurious will was filed with the clerk of the probate court. All were held to be, and punished as, direct contempts largely on the basis that while not committed in the physical presence of the judge, they were direct contumacious acts committed in an integral part of his court, which fact is also held to justify the hearing of evidence by the judge in such cases to establish the direct contempt. Indirect contempt is defined as one which in whole or in an essential part occurred out of the presence of the court, is not admitted, and which is therefore dependent for its proof upon evidence of some kind. (*People* v. *Sherwin*, 353 Ill. 525.) Where the judge does not have full personal knowledge of every element of the contempt and its demonstration depends on the proof of facts, of which the court would have no judicial notice, the contempt is held to be indirect. (*People* v. *Berof*, 367 Ill.

454.) In the instant case the alleged contempt occurred in the very presence of the court, but it is questionable whether all elements of the offense were matters within the personal knowledge of the judge. The alleged false swearing was not admitted and was dependent for its proof on extrinsic evidence.

We do not find, nor has counsel brought to our attention, any previous decision of this court involving contempt proceedings against a witness at a trial for false swearing, other than the *Siegal case,* 400 Ill. 208; however, we did not pass on the merits of that case, and it is apparent, too, that all the elements of the offense committed there were within the personal knowledge of the judge. In the *Berof case* the defendant answered falsely under oath as to his qualifications to act as surety for one charged with a crime. In *People* v. *Gard,* 259 Ill. 238, a police officer present at a *habeas corpus* hearing wrongfully informed the trial judge that there were no further charges against the relator other than the one then under consideration. Our examination of other opinions involving false swearing reveals none similar in its facts to the present case. Inasmuch as writs of error to review a conviction for contempt are normally sued out of the Appellate Courts of our State, the precise question whether false swearing while appearing as a witness before the court constitutes direct criminal contempt has been heard and passed upon by the Appellate Courts. While not binding on this court, their decisions are persuasive, when considered with the decisions of this court, that a harmonious rule exists in our courts of appeal in the treatment of contemnors charged with false swearing as witnesses. It has been held that where the record shows the falsity of the witness was not known to the court at the time, but the fact was developed by a subsequent inquiry, a charge of direct contempt cannot lie. (*People* v. *Stone,* 118 Ill. App. 475; *People* v. *LaScola,* 282 Ill. App. 328; *Butwill* v. *Butwill,* 312 Ill. App. 218.) The basis

for such ruling is aptly stated in the *Stone case,* at page 477: "But there is nothing in the record to disclose that the court knew the testimony was false. In a case of direct contempt, it may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness's own admission or perhaps by unquestioned and incontrovertible evidence. Otherwise the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matters of fact of which it had judicial cognizance, which is essential to the summary proceeding for direct contempt. * * * If false swearing in the presence of the court constitutes direct contempt, then judicial knowledge of its falsity is, in our opinion, indispensable to the right of the court to exercise authority to commit therefor." The reasoning in the *LaScola case* is to the same effect. While this court has not been called upon to pass upon these findings of the Appellate Court, or directly upon a similar question, the decisions in the *Berof* and *Sherwin cases* show cognizance that such contempts cannot be punished as direct contempts. We said in the *Sherwin case,* at page 528: "An examination of the record discloses that the adjudication of guilt is at least in part necessarily based upon facts outside the personal knowledge of the presiding judge and facts which could only be determined by the taking of testimony. In view of the impossibility of anyone knowing what is taking place within the mind and heart of a fellow human being, it is manifestly impossible for the judge to have known that the plaintiff in error falsely, wickedly, knowingly and contemptuously 'presented' a false bill of exceptions." As we see it, the same limitation is true in a case of false swearing by a witness. In the early case of *People ex rel. Owens* v. *Hogan,* 256 Ill. 496, wherein this court reversed an order of the county court finding the defendant guilty of false swearing before a board of election commissioners, the

opinion, ending in a note of caution, stated: "It is not to be inferred because the question is not discussed, that we think a court can in any case, upon its own knowledge of the facts, punish summarily as for a contempt against the dignity of the court, a witness who has testified falsely in a cause."

We are of the opinion that the alleged false swearing of the plaintiffs in error in the case before us could not, and did not, constitute a direct contempt. There is nothing in the record which discloses the court knew, or could have known personally, that their testimony was false. The order of the court itself shows the falsity, if true, was disclosed by the testimony of Margery Quandt and Maria Harrison, heard in open court long after the divorce proceeding had been heard. When a court is said to know of its own knowledge that certain matters have occurred in open court before him, no testimony is required or permitted in a proceeding for direct contempt. Counsel for the People relies upon *In re Estate of Kelly,* 365 Ill. 174, as authority that evidence may be introduced in direct contempt proceedings. As previously pointed out, evidence was permitted only to allow the judge to establish the direct contempt that occurred before an integral part of his court. The court in that opinion concluded from the record that the spurious will itself, of which the judge had judicial notice, was suspicious enough to provoke the contempt proceeding. It is further urged by the People that an examination of the testimony given by plaintiffs in error at the divorce hearing reveals its "obstructive characteristics, extensive materiality, and falsity." Even if such contentions were true, and we ·believe they are not, the defects were not apparent to the trial judge, for a week after hearing such testimony he signed a decree granting the divorce, which he certainly would not have done if the testimony had been noticeably defective. The contempt orders which state that the findings of the court are based

on the testimony of Margery Quandt and Maria Harrison also belie the contention that the trial judge was aware of the alleged false swearing before the additional witnesses testified.

Under the decisions of this court, we are of the opinion the alleged contempt was indirect and not punishable summarily as in the case of a direct contempt. This being so, plaintiffs in error were entitled to be heard on a formal charge. A proceeding for a contempt violation is not for a violation of the criminal law, but it is criminal in form and in substance and may subject the defendant to either fine or imprisonment, or both. In *People* v. *Clark,* 280 Ill. 160, and *People* v. *Severinghaus,* 313 Ill. 456, this court held that while the pleading in a contempt proceeding did not need to have all of the formalities of a criminal complaint it was incumbent in proceedings for indirect contempt to have the information, petition or affidavit positively verified by an affidavit. This right was not accorded plaintiffs in error in the present case, for the charge against them consisted only of an unverified petition filed by the State's Attorney. The alleged falsity of their testimony, including whether or not plaintiffs in error knew that it was false when given, was a point of which they were entitled to purge themselves by answer under oath if they chose to do so, leaving the People to their remedy by indictment for perjury if they considered the answers false. *People* v. *McDonald,* 314 Ill. 548; *People* v. *McLaughlin,* 334 Ill. 354; *People* v. *Sherwin,* 353 Ill. 525.

On the record before us, and in view of our finding that the alleged contempt was indirect criminal contempt, the summary method by which the trial court sought to punish plaintiffs in error denied them due process of law. Its judgments are void and are reversed.

*Judgments reversed.*