(No. 31279

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL F. POMEROY, Plaintiff in Error.

*Opinion filed January 18, 1950.*

176

HAROLD F. SCOVEL, of Chicago, (PAUL F. POMEROY, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, both of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff in error, Paul Pomeroy, was fined $100 and sentenced to one day in the county jail of Cook County for an alleged direct contempt of the superior court of Cook County before Julius J. Hoffman, a judge of that court. Claiming that the court's procedure denied him due process of law as guaranteed by the State and Federal constitutions, and that it invaded certain other of his constitutional rights, plaintiff in error, by this writ of error, seeks direct review by this court. The constitutional issues presented were raised and passed upon in the trial court when it denied plaintiff in error's motion and petition to expunge the contempt order. The issues have been properly

preserved for review, in which case the writ may be sued out of this court. *People* v. *Harrison,* 403 Ill. 320; *People* v. *Seymour,* 272 Ill. 295.

The record shows that on February 4, 1949, plaintiff in error appeared in the superior court as attorney for one Feigenbaum, who, at the proceeding on that date, was found guilty of contempt for nonpayment of alimony and sentenced to the county jail. At the termination of the alimony hearing, plaintiff in error and his client left the main courtroom and went to an adjacent anteroom normally used by attorneys to confer with clients. They were accompanied by two court bailiffs in whose custody Feigenbaum had been placed. While in the anteroom, with the door between that room and the main courtroom wholly open, the order recites that plaintiff in error uttered in a loud and belligerent manner certain insulting and contemptuous language concerning the court and that immediately following his statements he created a disturbance in the anteroom and otherwise disturbed the court and interfered with its conduct of business. The evident theory upon which the commitment order was drawn is that because the door to the anteroom was open, and because the door was in the line of ocular vision of the court, plaintiff in error's words and actions constituted a direct criminal contempt occurring in the presence of the court. A consideration of the whole record makes it apparent that the court did not hear the words which were spoken or know of the events in the anteroom until he was informed of them by the bailiffs at a later recess of the court. That this was the true state of affairs is borne out by the presiding judge at the time he ruled on the motion to expunge, when he stated as follows: "The only thing that is necessary is my knowledge. *It was brought to my knowledge.*" We are also led to conclude that the court did not see what transpired in the anteroom, for although the order recites that the court was disturbed in the conduct of its business, no interruption occurred,

nor did the occurrence provoke any summary or spontaneous action by the court against plaintiff in error. Others in the courtroom heard nothing and saw no indication that the judge was interrupted or impeded from administering the matters then before him.

The commitment order further recites: "That upon the foregoing occurrence, this court (the superior court) directed the respondent to appear  *  *  *  at 4:00 o'clock, on Friday, February 4th, 1949, so that this court might take such action as might be appropriate under the circumstances;" etc. The time and manner of transmitting such order to plaintiff in error is not clear. He says that he had it on hearsay from other attorneys present in court and returned at 4:00 P.M., but missed the judge while temporarily absent from the court room. The order states that the judge waited until 6:00 P.M., then set the matter for 10:00 A.M., on Monday, February 7, 1949, when plaintiff in error failed to appear. Notice of the Monday hearing was given by informing "a representative of the respondent that the respondent was to be present at that time." Just who the representative was is not clear. When plaintiff in error failed to appear at 10:00 A.M., Monday, the court continued the hearing until 12:30 P.M. of the same day and appointed Stephen Love as *amicus curiae.* The latter thereupon served "the respondent's office" with notice of the new time. Again the plaintiff in error failed to appear, whereupon the *amicus curiae,* at the direction of the court, prepared a draft of an order finding plaintiff in error in contempt. That same evening the *amicus curiae* served plaintiff in error with a copy of the order together with notice that the order would be entered by the court the following day. Plaintiff in error avers that this was the first time that notice had been served upon him, and that at no time was he ever ordered to appear before the court. He appeared in court on Tuesday by his attorneys and requested that he be given an opportunity to answer

any charge of contempt, or otherwise plead to any charges preferred. The court denied such plea saying that he had already found plaintiff in error guilty, (apparently referring to the 12:30 P.M. proceeding on Monday, at which time he directed a contempt order to be drawn,) and forthwith signed the contempt order here involved. The order signed, it seems, was in some respects different from the draft which had been served on plaintiff in error the previous evening. Subsequently the court refused to grant a verified petition and motion to expunge the contempt order. On the record thus made, this writ of error follows.

Plaintiff in error advances for our consideration thirty-six errors allegedly committed by the trial court in entering the order. From our consideration of the facts, we feel as the court did in *People* v. *Sherwin,* 353 Ill. 525, that in our opinion the contentions of plaintiff in error "may be disposed of by determining the one point of whether or not the plaintiff in error has been deprived of his constitutional rights as to due process of law as guaranteed to him by our State and Federal constitutions." It is true that when a contempt is committed in the presence of the court, the court may, in committing the offender, act of its own knowledge without further proof or examination, and the accused is not entitled to be heard in his own defense, nor can he complain that his constitutional rights are infringed by the refusal of a hearing. (*In re Savin,* 131 U.S. 267; *Ex parte Terry,* 128 U.S. 289.) With respect to constructive contempts or those committed without the actual presence of the court, it is essential that a hearing be allowed and that the contemnor be permitted, if he so desires, to interpose a defense to the charges before punishment is imposed. (112 Am. Jur. p. 437; *Cooke* v. *U.S.,* 267 U.S. 517.) We have repeatedly held in this court that a direct criminal contempt is one which takes place in the very presence of the judge, making all the elements of the offense matters within his own personal observation and

knowledge, and that such contempt may be punished without any formality of pleading, notice or answer. (*People* v. *Harrison,* 403 Ill. 320; *People* v. *Sherwin,* 353 Ill. 525; *People* v. *Rockola,* 346 Ill. 27.) Contempts committed out of the presence of the court, if admitted by 'the contemnor in open court, may also be punished summarily as a direct contempt. (*People* v. *Berof,* 367 Ill. 454.) We have also long held that an indirect contempt is one which in whole or in essential part ·occurred out of the presence of the court and which is therefore dependent for its proof upon evidence of some kind. In such case there must be a notice, citation or rule to show cause served upon the alleged contemnor. (*People* v. *Whitlow,* 357 Ill. 34; *People* v. *McDonald,* 314 Ill. 548.) Without looking to the question of whether or not plaintiff in error committed wrongful acts amounting to contempt of court, we must first decide whether he was denied due process of law.

We think it obvious from the order of commitment and from other portions of the record that the court itself did not hear the words allegedly spoken by the plaintiff in error, but was dependent for his knowledge on the report of his bailiffs. There is also considerable doubt from the procedure followed that any words or act of plaintiff in error were committed in the presence of the court, or were so near, as to interrupt or disturb its proceedings. These facts being so, the finding of guilt at least in part is necessarily based upon facts outside the personal knowledge of the judge, which facts would not come within his judicial knowledge, but which must have been determined by the taking of testimony. The very nature of oral or spoken words constituting contempt would make it necessary that they be heard by the presiding judge, or admitted to him in open court, to bring the matter within his personal knowledge and thus constitute a direct contempt. For the reasons stated we conclude that the contempt, if any, was an indirect contempt, thus giving plaintiff in error the constitu-

tional right to know the nature of the charge against him, to have it definitely and specifically set forth by citation or rule to show cause, and to be accorded an opportunity to answer and to introduce evidence in his own defense.

The judgment violates the State and Federal constitutions in depriving plaintiff in error of his liberty without due process of law, and it is therefore reversed.

*Judgment reversed.*