(No. 44030.—)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL B. JAVARAS, Appellant.

*Opinion filed March 30, 1972.*

DOMINICK VARRAVETO, JR. and ROBERT P. BRANDENBURG, both of Chicago, for appellant.

EDWARD V. HANRAHAN, State's Attorney, of Chicago (DANIEL P. COMAN and JAMES A. ROONEY, Assistant State's Attorneys, of counsel), for the People.

MR CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

By order of the circuit court of Cook County, the defendant, Paul B. Javaras, was adjudged guilty of direct criminal contempt of court and sentenced to sixty days imprisonment in the Cook County jail. He argues that the summary nature of the contempt proceedings below deprived him of his State and Federal constitutional rights to due process of law.

The events leading to the contempt charge against the defendant occurred on November 21, 1969, on the twenty-first floor of the Chicago Civic Center. That floor houses various courtrooms of the circuit court of Cook County. On that morning, the defendant and his former wife were scheduled to appear in Room 2108 before Judge Robert L. Massey for a post-decree hearing in their divorce case. The parties arrived on the twenty-first floor and waited there for their respective counsel in an area containing benches near the elevators. The defendant's former wife was represented in the divorce matter by Attorney Burton I. Zoub who arrived on the twenty-first

floor at approximately 10:15 A.M. and conferred briefly with his client. The defendant beckoned Zoub and they engaged in a short conversation concerning the financial matters to be heard that morning before Judge Massey. When they completed their conversation, Zoub turned and started to walk away from the defendant. He testified that after he had walked approximately ten feet, he was knocked to the floor from behind by the defendant who proceeded to choke him and beat him with his fists. More than fifty persons were in or near the area where the incident occurred, and several spectators separated the two men. Zoub then went down a corridor to the courtroom of Judge Massey and personally reported the incident to him. The defendant was taken into custody and ordered to appear for a contempt proceeding before Judge Massey at 3:00 P.M. that day.

Over objection of the defendant, the contempt hearing was held before Judge Massey at approximately 3:30 P.M. No formal charges or other pleadings were filed. Judge Massey heard testimony of the defendant's former wife, two attorneys who witnessed the altercation, Zoub, and the defendant. He then entered an order which included findings that the court had set between seventy and eighty motions and petitions to be heard on November 21, 1969; that due to lack of adequate courtroom facilities it was necessary for attorneys, witnesses and parties to meet and prepare matters in the corridor outside courtroom 2108; and that due to this necessity, and the custom and usage of attorneys in divorce cases, that corridor was a part of the courtroom facilities of the divorce court. The court's order further read that "based on this court's view of the victim Burton I. Zoub in a battered and bruised condition, and the evidence and testimony presented by witnesses, It is Hereby Ordered and Adjudged that defendant Paul Javaras has impeded, embarrassed and obstructed the court in its administration of justice, and brought the administration of justice into contempt, and. is guilty of direct contempt of court."

Criminal contempt of court has been generally defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. *(In re Estate of Melody (1969), 42 Ill.2d 451; People v. Gholson (1952), 412 Ill. 294; People v. Hagopian (1951), 408 Ill. 618; In re Estate of Kelly (1936), 365 Ill. 174.)* All courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the proper administration and execution of their judicial powers. *(People v. Loughran (1954), 2 Ill.2d 258; People v. Siegal (1948), 400 Ill. 208.)* The case before us raises the question of the procedural requisites for such punishment.

The procedural requirements for judicial punishment for criminal contempt of court depend upon whether the contempt is "direct" or "indirect." Previous decisions of this court have recognized two types of direct criminal contempts—those which are personally observed by the judge and those which are not personally seen by the judge but take place in an integral or constituent part of the court and are thereby deemed to have occurred in the constructive "presence of the court." *(People v. Skar (1964), 30 Ill.2d 491; In re Estate of Kelly (1936), 365 Ill. 174; People v. Andalman (1931), 346 Ill. 149; People v. Cochrane (1923), 307 Ill. 126.)* As a general rule, a direct criminal contempt (involving punishment of less than six months imprisonment) which is personally seen by the judge may be summarily punished without the necessity of a hearing or other procedural formalities. A direct criminal contempt which occurs in the constructive "presence of the court" may call for the hearing of extrinsic evidence *(People v. Howarth (1953), 415 Ill. 499; People v. Harrison (1949), 403 Ill. 320; People v. Andalman (1931), 346 Ill. 149)*, although, again, the proceeding may be essentially summary in nature. If, however, such evidence is necessary to establish the contempt, notice and hearing

are required. *Skar, p. 494; In re Oliver (1948), 333 U.S. 257, 92 L.Ed. 682, 68 S.Ct. 499.*

Indirect criminal contempts are those in which the whole or an essential part of the contemptuous acts occur out of the presence of the court; *i.e.,* they are not personally observed by the judge or do not occur in an integral or constituent part of the court. In a proceeding to punish for indirect contempt, the alleged contemner must be informed of the charges against him by information, notice, citation, or rule to show cause, and he must be given an opportunity to file an answer thereto and receive a full hearing thereon *(People v. Pomeroy (1950), 405 Ill. 175; People v. Whitlow (1934), 357 Ill. 34; People v. McDonald (1924), 314 Ill. 548),* together with a jury trial, when demanded, in cases involving serious contempts. *Bloom v. Illinois (1968), 391 U.S. 194, 20 L.Ed.2d 522, 88 S.Ct. 1477; In re Estate of Melody (1961), 42 Ill.2d 451.*

In the case before us, the defendant argues that if any criminal contempt was committed, it was an indirect contempt, and that he was denied the procedural formalities applicable to punishment for indirect contempts. The People, on the other hand, argue that the area where the incident occurred was a constituent part of the court, and summary direct criminal contempt proceedings were therefore proper.

There was no evidence that the commotion was heard by Judge Massey or that it in any way interrupted matters then being heard in his courtroom or in any of the other courtrooms on the twenty-first floor of the Chicago Civic Center. It is conceded that Judge Massey first learned of the incident when Zoub came to his courtroom and reported to him. Nevertheless, the People argue that the area where the incident occurred should be considered a constituent part of the court, since that area, by practice and custom, was utilized by attorneys and their clients to discuss matters directly related to proceedings in the

various courtrooms on the twenty-first floor of the building. In support of this contention, the People rely on previous cases where it has been held that filing papers with the clerk of the court contrary to the court's order *(People v. Andalman (1931), 346 Ill. 149)*, filing a spurious will with the clerk *(In re Estate of Kelly (1936), 365 Ill. 174)*, sending correspondence to the grand jury in an attempt to influence its decision *(People v. Parker (1940), 374 Ill. 524)*, and refusal to answer questions before the grand jury *(People v. Cochrane (1923), 307 Ill. 126)* constituted contempts committed "in the presence of the court," thereby justifying direct contempt proceedings even though the acts were not committed in open court where the judge was personally present.

The determination of what constitutes a contempt committed "in the presence of the court" necessarily depends not only on the physical location but also on the nature of the act. It seems clear that the filing of documents in the office of the clerk of the court and actions before the grand jury in the cases relied on by the People involved a type of conduct in a setting very different from the type and place of the conduct in the case before us. The case at bar involves facts which are more analagous to those in *People v. Pomeroy (1950), 405 Ill. 175; People v. Whitlow (1934), 357 Ill. 34;* and *People v. McDonald (1924), 314 Ill. 548.* Those cases dealt with assaults or disturbances in a court anteroom, a courtyard directly outside a courtroom, and a corridor fifty feet from the courtroom, respectively. In each case, it was held that the conduct did not occur in the presence of the court so as to justify summary direct contempt proceedings. The fact that the area on the twenty-first floor of the Civic Center where the incident occurred may be used for discussions between clients and their attorneys does not, on the facts of this case, render that area a constituent or integral part of the court within the meaning of our prior decisions. We conclude that the defendant's actions did

not take place "in the presence of the court," and direct criminal contempt proceedings were therefore improper.

In so holding, we do not pass on the question of whether the defendant's conduct in this case was contemptuous or whether it must be prosecuted as a criminal charge. We hold only that his conduct, if contemptuous, constituted indirect contempt of court. The procedural requirements for indirect criminal contempt proceedings were not complied with below, and the judgment of the circuit court of Cook County must therefore be reversed.

*Judgment reversed.*