THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee *v.* RICHARD A. SUNNEN, Defendant.—(EDWARD ZUKOSKY, Respondent-Appellant.)

Fourth District No. 14243

Opinion filed January 20, 1978.

GREEN, P. J., concurring in part and dissenting in part.

Edward Zukosky, of Wenona, for appellant, *pro se*.

C. David Vogel, State's Attorney, of Pontiac (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The respondent, Edward Zukosky, is an attorney licensed to practice in the State of Illinois. The respondent represented the defendant at his Livingston County trial for attempt murder and aggravated battery, violations of sections 8—4 and 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4, 12—4). During the course of that trial, the respondent was found to have violated a discovery order by failing to disclose his intention to introduce a kitchen door into evidence. After the defendant had been acquitted of both offenses, the court, without affording the respondent notice or a hearing, entered a finding of contempt, sentenced the respondent to 1 year conditional discharge,

fined him $750, and ordered that he deliver letters to each State's Attorney in the Eleventh Judicial Circuit stating that he will fully comply with future discovery orders entered by the court in compliance with the Supreme Court Rules.

On appeal, the respondent has filed a prolix brief which only partially complies with Supreme Court Rule 341(e) (58 Ill. 2d R. 341(e)) governing the form of appellate briefs. The most glaring omissions from that brief are its lack of either a statement of the issues or of a statement of fact. Evidently, however, the respondent alleges, *inter alia,* that his conduct, if it could be termed contemptuous, was neither a direct contempt for which he could be summarily punished nor was he afforded an opportunity to rebut a charge of wilfulness.

Prior to defendant's trial, the State filed a discovery motion to compel disclosure of "tangible objects" which the defense intended to use as evidence or for impeachment. The court allowed the motion and ordered compliance by August 1, 1976. Although defendant did not file a formal answer to the motion, he did inform the State that while he had no medical or scientific evidence, he did have certain photographs for use in impeachment.

At trial, the State sought to prove that defendant attacked his wife with several knives in the kitchen of his mother's home. The wife testified that she was prohibited from fleeing the house because the kitchen door was locked. During the defendant's case, the respondent had the kitchen door admitted into evidence in order to demonstrate that it could not be locked to anyone standing in the kitchen. The State did not object to admission of the door, but it did ask that the respondent be sanctioned for his wilful failure to comply with the discovery order. It was at that point that the court found that its discovery order had been violated. The court stated that it would take the question of sanctions under advisement.

On October 1, 1976, approximately one week after defendant was acquitted of all charges, the trial judge entered a summary, written order adjudging the respondent in contempt of court. Neither the State nor the respondent was present in court when this order was entered. On November 10, 1976, a hearing was held on respondent's motion to vacate the contempt order. The motion was denied and the respondent was sentenced by the court. A hearing on a second motion to vacate was held on December 6, 1976, but that motion was also denied.

The record reflects that the respondent completely failed, either orally or in writing, to inform the prosecutor of his intention to use the kitchen door at trial. The record does reflect, however, that the door had been present in the courthouse for several hours prior to respondent's use of it in this case. During the noon recess on the day it was offered into evidence, the prosecutor noticed the door in the courtroom and informed

the court that respondent had failed to disclose it to the State. The respondent contends, however, that he did not form an intent to use the door until he heard defendant's wife's testimony that morning. The court then noted that the door would have had to have been removed from the house sometime in the morning prior to the wife's testimony.

■■■ In *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670, our supreme court stated:

"Criminal contempt of court has been generally defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. (*In re Estate of Melody* (1969), 42 Ill. 2d 451; *People v. Gholson* (1952), 412 Ill. 294; *People v. Hagopian* (1951), 408 Ill. 618; *In re Estate of Kelly* (1936), 365 Ill. 174.) All courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the proper administration and execution of their judicial powers. (*People v. Loughran* (1954), 2 Ill. 2d 258; *People v. Siegal* (1948), 400 Ill. 208.) The case before us raises the question of procedural requisites for such punishment.

The procedural requirements for judicial punishment for criminal contempt of court depend upon whether the contempt is 'direct' or 'indirect.' Previous decisions of this court have recognized two types of direct criminal contempts—those which are personally observed by the judge and those which are not personally seen by the judge but take place in an integral or constituent part of the court and are thereby deemed to have occurred in the constructive 'presence of the court.' (*People v. Skar* (1964), 30 Ill. 2d 491; *In re Estate of Kelly* (1936), 365 Ill. 174; *People v. Andalman* (1931), 346 Ill. 149; *People v. Cochrane* (1923), 307 Ill. 126.) As a general rule, a direct criminal contempt (involving punishment of less than six months imprisonment) which is personally seen by the judge may be summarily punished without the necessity of a hearing or other procedural formalities. A direct criminal contempt which occurs in the constructive 'presence of the court' may call for the hearing of extrinsic evidence (*People v. Howarth* (1953), 415 Ill. 499; *People v. Harrison* (1949), 403 Ill. 320; *People v. Andalman* (1931), 346 Ill. 149), although, again, the proceeding may be essentially summary in nature. If, however, such evidence is necessary to establish the contempt, notice and hearing are required. *Skar*, p. 494; *In re Oliver* (1948), 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499.

Indirect criminal contempts are those in which the whole or an essential part of the contemptuous acts occur out of the presence of

the court; *i.e.*, they are not personally observed by the judge or do not occur in an integral or constituent part of the court. In a proceeding to punish for indirect contempt, the alleged contemner must be informed of the charges against him by information, notice, citation, or rule to show cause, and he must be given an opportunity to file an answer thereto and receive a full hearing thereon (*People v. Pomeroy* (1950), 405 Ill. 175; *People v. Whitlow* (1934), 357 Ill. 34; *People v. McDonald* (1924), 314 Ill. 548), together with a jury trial, when demanded, in cases involving serious contempts. *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477; *In re Estate of Melody* (1961), 42 Ill. 2d 451." 51 Ill. 2d 296, 299-300, 281 N.E.2d 670.

■■ ■ In the instant case, the respondent's allegedly contemptuous behavior was essentially committed outside the presence of the court and the respondent has not unequivocally admitted in open court that he committed the contempt. Accordingly, he was entitled to notice of the charges against him and he should have been afforded an opportunity to file an answer thereto and to receive a full hearing thereon. The procedural requirements for indirect criminal contempt proceedings were not complied with in the circuit court and the judgment of that court must therefore be reversed.

In addition, the evidence before us is insufficiently persuasive to establish that the defendant wilfully flaunted the court's discovery order. A more accurate description of his conduct would be that it was inept and demonstrated a lack of understanding that a trial is a search for truth and not a game between opposing counsel. Counsel should have understood that, within constitutional limitations, our modern procedures for criminal discovery are concerned with the undaunted quest for truth. As a consequence, trials today are wholly unlike the hotly contested evidentiary battles seen in trials at common law. (See generally Zagel & Carr, *State Criminal Discovery and the New Illinois Rules*, 1971 U. Ill. L. F. 557.) The respondent's arguments at trial in this cause and before this court reflect that he is unaware of the import of our rules of discovery. Careful and complete compliance with those rules, within constitutional limitations, is a necessary element to the quest for truth.

Reversed.

WEBBER, J., concurs.

Mr. PRESIDING JUSTICE GREEN, concurring in part and dissenting in part:

I agree that the alleged contempt was indirect in nature and required

the formalities of petition, notice and hearing. The possible reasons for the failure to give notice of the intended use of the door concerned matters not before the court. I concur in the decision to reverse the finding of contempt and the sentence imposed.

I dissent from the decision not to remand the case back to the trial court for a hearing upon a proper petition with proper notice. A court has need to enforce its discovery orders. The exclusion of defense evidence for failure to comply with discovery is discouraged. Contempt is an appropriate alternative. When an attorney is under order to disclose the evidence he intends to use, I do not deem the unexplained failure to disclose an exhibit which the attorney had made earlier preparation to use to be an insufficient factual basis for a contempt finding. The purpose of permitting the respondent a hearing is to give him a chance to counter this evidence and to make what explanation he can. I would remand the case for that purpose.