In the Matter of the Estate of Evelyn Shapiro, a/k/a Evelyn Abrams, Deceased.
Daniel P. Ward, State's Attorney of Cook County, and Gregory A. Gelderman, as Amicus Curiae in the Above Estate, Petitioners-Appellees, v. Harry Phillips, Respondent-Appellant.

Gen. No. 48,733.

First District, First Division.
September 9, 1963.

Harry R. Booth, of Chicago, for appellant.

Daniel P. Ward, State's Attorney, of Chicago (Gerald L. Mannix and Thomas A. Hett, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Respondent appeals from an order of the Probate Court sentencing him to a term of ten days in jail for contempt of court. The charge, which was lodged on the court's own motion, involved the filing of an improperly executed document purporting to be the will of respondent's deceased sister, Evelyn Shapiro, whose estate was undergoing probate at the time.

The facts are not in dispute. Decedent, who had been separated from her husband for about six years, became afflicted with a critical illness for which she was hospitalized and underwent surgery in May, 1961. On or about May 9—a week before she died—respondent was visiting her in the hospital when, upon opening a drawer to get her some Kleenex, he noticed the document in question. While his sister was out of the room he read it and saw that it had been typed on a printed will form, and that it bore his sister's signature under the date of May 9, 1961. He saw also that it appeared to leave ten dollars to her husband and the remainder of her estate in equal shares to respondent and his three other sisters. He took the document with him without discussing it with decedent, and he did not think she had seen him take it. Later he reread it, knew it was a will, and that it had blank spaces for necessary witnesses to sign.

Without telling his sisters about the will, respondent took it to the home of his friends, Anthony and Clara Sacino, and their sister, Rose Shapiro. Other Sacino relatives were also present. Respondent showed them the will, told them about his sister's illness, and asked Anthony, Clara and Rose to sign the will as witnesses. They all signed without reading the will or asking any questions about it because they trusted respondent and had been friends of all his family for many years. They knew that decedent was in the hospital at the time.

Respondent kept the document in his home, and spoke of it to no one else until about four days after Evelyn's death. He then took it to his sister Dorothy and she read it. He explained to her the circumstances under which he had acquired the will and how he had obtained the witnesses' signatures. He asked his sister to take the will to the Probate Court and file it. She did so on June 13, 1961.

Meanwhile, on June 6, decedent's husband, Harry Shapiro, had filed a petition for letters of administration of her estate, and on June 7 an administrator was appointed. On July 25 the administrator filed a petition for instructions, advising the court that the will had been on file for more than 30 days and that the named executor (respondent's sister Genevieve) had not petitioned for its probate nor indicated any intention of doing so. The court ordered the administrator to take steps to set the purported will for hearing on its admission to probate, to subpoena the witnesses and the persons named in the will, and to notify the State's Attorney. The court also appointed an amicus curiae for the purpose of investigating all matters relating to the execution of the purported will.

Shortly thereafter respondent and his sisters consulted an attorney, Benjamin Black, for advice in regard to the estate. Black investigated the facts and advised them that the will was invalid because it had not been properly witnessed. Acting on this legal advice, respondent and his sisters determined not to petition for probate of the document they had filed, and Genevieve filed a declaration of refusal to act as executor, pursuant to Section 62 of the Probate Act. (Ill Rev Stats 1961, c 3, § 62.)

On September 8, 1961, at the first hearing on the matter of the probate of the will, before an assistant to the Probate Judge, Black appeared on behalf of respondent and his sisters and made an oral motion that

the will be denied probate. His motion was not allowed, however, and the entire matter was referred to the Probate Judge for hearing on September 14. On that date the amicus curiae informed the court that the will had been filed with the clerk on June 13; * that no petition for its probate had ever been filed; and that the executor named had filed her refusal to act.

Black told the court that the filing of the will had been in compliance with the requirements of Sections 60 and 61 of the Probate Act. He also advised the court that his investigation had disclosed that the witnesses had not signed in the presence of the testator, and he therefore renewed his motion for denial of probate. The motion was overruled, and the court directed the amicus to proceed on the court's own motion to prove the will.

The hearing was resumed on October 18, 1961, at which time Black again moved to deny probate of the will, and again his motion was overruled. Witnesses were called and they testified to the facts recited above. The court ordered that the will be denied admission to probate, and directed that a petition be filed for the issuance of a rule to show cause why respondent should not be held in contempt of court.

Accordingly, on petition of the amicus and the State's Attorney, a rule to show cause was entered on November 7, 1961 charging that respondent had removed a purported will from decedent's hospital room and had obtained signatures of witnesses, all without decedent's consent; that he had the document witnessed, and caused it to be filed knowing it was illegal; that he thus subjected the court to ridicule.

Respondent filed a verified answer admitting that he took the will and had it witnessed without dece-

---

* At the hearing on September 8 the amicus had advised the court that the will had been filed with the clerk "pursuant to statute."

dent's knowledge, but asserting that he had assumed her consent from the fact of her having the signed document in her hospital room. The answer further asserted that he believed the document to have been a proper will, properly witnessed and properly filed; and denied that he knew it was illegal. Continuing with the answer, respondent stated that he intended no disrespect for the court; that upon being advised that the will was not properly executed he approved his sister's action in refusing to act as executor; that he acted in good faith within his limited knowledge of the law in regard to wills; that he had never offered or caused the will to be offered for probate; that he apologized for having inconvenienced the court.

After hearing arguments on November 28, the court entered its contempt order on December 5, 1961 and this appeal followed.

The arguments of respondent in this court are primarily those implicit in the answer he filed in the trial court. The State relies exclusively on the decision in In re Estate of Kelly, 365 Ill 174, 6 NE2d 113. Both sides recognize that the quantum of proof required for conviction is proof beyond a reasonable doubt. (People v. Panczko, 20 Ill2d 237, 240, 170 NE2d 130.)

The Kelly case also involved a will, but its facts were strikingly dissimilar to those in the case at bar. In Kelly the testator's signature was forged and, in fact, the document in question was prepared in its entirety after the death of the purported testator; here, without instigation or knowledge on respondent's part, the body of the questioned document was completed prior to execution by decedent, and it is not disputed that her signature was genuine. In Kelly the contemnor was an attorney, fully versed in the law of wills and probate; here respondent is a layman, untutored

82

in the law and unfamiliar with probate procedures.* In Kelly the forged and spurious document was presented for probate with knowledge of its falsity; here the purported will was never presented for probate, but was abandoned immediately upon respondent's being advised by a lawyer that it was invalid as a will.

 We will take notice of the fact that of the many wills which have been filed with the clerk of the court pursuant to Section 60 of the Probate Act, there are thousands which have never been presented for probate. There are, perhaps, many reasons why documents thus filed are not probated, but surely one of the prominent ones would be their failure to meet the strict qualifications of the Probate Act in regard to signing and attestation. (Ill Rev Stats, c 3, § 43.) The State would have us interpret Section 60 in such a way as to require the filing of only such documents as would be found to constitute valid wills. This we cannot do without placing upon every person, layman and lawyer alike, who might have possession of a document purporting to be a will, the burden of making a legal determination of its validity, risking a penalty of twenty dollars per month for withholding a will which should have been filed, and a jail sentence or fine for contempt of court if a document filed were later to be declared invalid. Such a burden of decision is properly left where we believe the statute leaves it—on the Probate Court.

---

* In the Kelly opinion the Supreme Court highlighted this distinction, saying at page 184: "When the defendant, Waitches, presented the purported will to the court he did so as an officer of the court. Courts should require that practicing attorneys have a higher regard for the administration of justice than that which is required of the layman. Utter disregard of attorneys as to the truth or falsity of matters contained in papers and documents presented to courts warrants condemnation as unethical and contemptuous."

It is our conclusion that the necessary contemptuous elements present in the Kelly case are not supported by evidence in the case at bar, let alone established beyond a reasonable doubt. The order of the Probate Court is, therefore, reversed. (People v. Spain, 307 Ill 283, 292, 138 NE 614.)

Reversed.

MURPHY and BURMAN, JJ, concur.