People of the State of Illinois, Plaintiff-Appellee, v. E. Wayne Miller, Defendant-Appellant.

Gen. No. 49,298.

First District, Third Division.

October 7, 1965.

John B. Lampe, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from the superior court of Cook County seeking to reverse two separate convictions and sentences wherein defendant was found guilty of criminal contempt of court. The sentences were to run consecutively.

Defendant contends that he was not proven guilty beyond a reasonable doubt as to the first conviction and sentence, and that as to the second, the court improperly interrogated the defendant on the question of the court's prejudice which was set forth in the petition of the defendant for a change of venue.

The facts are these. The defendant, E. Wayne Miller, had been awarded the custody of his minor children, Laurie Ann, aged 4, and Glenn, aged 16, pursuant to a decree of divorce entered by the superior court of Cook County, Illinois, on May 17, 1962, against Lyllian G. Miller. The son, Glenn, thereafter attended school in Powers, Montana. On April 10, 1963, the son visited his father at the father's home in Chicago, where the minor child, Laurie Ann, resided. On April 11, 1963, Laurie Ann was taken from the home of this defendant by the son, Glenn Miller. On May 1, 1963, Lyllian G. Miller, the ex-wife of the defendant, filed her petition in the superior court of Cook County, Illinois, seeking to obtain the

136

custody of both children. The defendant herein filed a motion to strike the petition, which motion to strike after argument was denied by the trial judge. Thereafter a petition for change of venue was presented to the trial judge by the defendant herein on May 6, 1963, which was denied, and again, on May 7, 1963, a similar petition for change of venue was presented by the defendant herein to the judge. Upon the presentation of the latter petition the judge interrogated the defendant in open court regarding his reasons for filing the said petition. This defendant advised the court of his reasons for requesting a change of venue, stating, in effect, that when he had last appeared before the judge the latter had denied him his daughter's custody. The court then called Lyllian G. Miller, defendant's ex-wife, before the bench, and by questions put to her by the court elicited that the defendant herein accosted Lyllian G. Miller in the hallway after the previous hearing. The trial judge then called Lyllian G. Miller's attorney, James N. Kosmond, before the court and upon cross-examination elicited from him that following the hearing held on May 1, 1963, Lyllian G. Miller had advised him that this defendant had approached her and told her that "I have got the Judge fixed." This hearsay evidence was admitted over the objection of the attorney for the defendant. Mr. Kosmond further testified that he had not heard the defendant make this statement. The court then turned to the defendant herein and asked him if he had heard Mr. Kosmond testify and the defendant responded "This is a complete lie." The court further questioned Lyllian G. Miller, who testified that following the hearing of May 1, 1963, the defendant had walked by her in the back of the courtroom and remarked "I have this fixed with the judge." Further, that she had informed Mr. Kosmond of the foregoing and that then she and Mr. Kosmond had reported this to the court. The court thereafter entered a rule upon this defendant

137

in open court to show cause why he should not be held in contempt.

The matter was continued from time to time, and was further heard by the court on June 4, 1963, at which time the court stated to counsel for this defendant the following: "Fine. And I afforded you the opportunity, which I stated was more or less of a gratuity on the Court's part, to present evidence on behalf of your client. You may proceed." To which Mr. Goldman, who was then this defendant's attorney, stated: "I believe it is kind of a matter of right, Your Honor; I appreciate it." To which the court replied: "You and I differ on that. . . ."

Lawrence W. Harris, who had appeared in court on May 1, 1963, as attorney for this defendant in response to a petition by Lyllian G. Miller to obtain the custody of her two children, testified that he had presented to the court a motion to strike the petition and that said motion had been denied. He, thereupon, prepared the order in the courtroom, and that during this time the defendant herein sat to his left in a seat with the child Laurie Ann on his lap; that the defendant was in his presence during that time; that the defendant had talked to his son and to his daughter and that he had heard some of the conversation between this defendant and his son. He did not hear or see the defendant address his former wife. That after drawing the order he handed it to the court. That defendant and his former wife during this time were sitting on opposite sides of the courtroom and after the order was signed he went to the door of the courtroom with his client, the defendant, and pushed his client out of the door. That the defendant's former wife was standing at the door with her attorney, Mr. Kosmond, and that neither Mr. Kosmond nor defendant's former wife said anything to him at that time about the defendant having said that he had the judge fixed, and

138

that this witness did not hear defendant say anything of that nature.

The defendant testified that he had appeared in court on May 1, 1963, pursuant to a petition and that after the court had ruled he requested the judge if he could see his daughter for a few minutes, and upon being advised that he could he walked over to the door of the courtroom and picked up the baby and sat in the third seat from the back on the east wall of the courtroom, and he sat in the back alongside of his attorney at the table about four feet from where his attorney was sitting; that he did not talk to his former wife at any time, and that he did not remark to her, or anyone else "I have got the judge fixed." He further testified that after that he handed the baby girl to his former wife and was hurried out of the courtroom by attorney Harris because of an altercation he had had with his son. That he did not have any conversation with his ex-wife.

James N. Kosmond was again called and testified that he had been present in the courtroom on May 1, 1963, but that he did not hear any conversation between the defendant and defendant's ex-wife.

Defendant's son also testified at this hearing, and while he was most unfriendly to his father, the defendant, he did not testify that he heard any conversation between his father and his mother.

At the conclusion of the testimony the court found (1) that this defendant had made the alleged remarks at the conclusion of the hearing on May 1, 1963, and had thereby committed a direct contempt of court, for which he sentenced the defendant to 30 days in the county jail, and (2) that defendant, in stating that the judge was prejudiced against him as his reason for his petition for a change of venue filed on May 7, 1963, thereby lied and had thereby committed a further direct contempt of court, for which he sentenced him to an additional and consecutive 30 days in the county jail.

139

The first question before the court is whether the defendant was proven guilty beyond a reasonable doubt of the charge that he made the statement about having the case fixed with the judge. A case of criminal contempt must be proved beyond a reasonable doubt. People v. Panczko, 20 Ill2d 237, 170 NE2d 130; People v. Barasch, 21 Ill2d 407, 173 NE2d 417; In Re Estate of Shapiro, 43 Ill App2d 78, 192 NE2d 564; People v. Vitucci, 49 Ill App2d 171, 199 NE2d 78.

The State contends that the quantum of proof was met in this case. In substance, the State contends that since Mrs. Miller swore that defendant told her that he had the case fixed with the judge, and defendant swore that he did not say this, it was up to the trial judge to resolve the question of the credibility of the witnesses and that appellate courts will not reverse convictions because the trial judge chose to believe one witness over another. With that statement of law we have no quarrel, and if the only evidence to be considered by this court were the testimony of the defendant and that of his ex-wife, this court would under ordinary circumstances not disturb a conviction wherein the trial judge had an opportunity to observe the witnesses, their candor or lack of candor while testifying and their general demeanor as witnesses. In this case, however, the defendant is charged with having made the statement to his ex-wife within minutes of the time that the trial judge had ruled against him on a motion to strike the petition of the wife for the custody of the children. Does it sound reasonable that a person, who has just received an adverse finding from the judge, would tell his opponent that he had the judge fixed? Furthermore, none of the other persons in the courtroom, who testified at the hearing, even saw the defendant talking to his ex-wife at any time in the courtroom and certainly none overheard the statement attributed to the defendant. Under the facts in this case, it could have been just as reasonable for the

trial judge to have considered the possibility that the defendant's ex-wife was seeking to ingratiate herself with the judge by accusing the defendant of having made the remark complained of and prejudicing the judge against the defendant. Certainly she might have felt that she would gain by either ingratiating herself with the judge or prejudicing the judge against the defendant. The witnesses, besides the defendant's ex-wife, who testified were not all friendly witnesses, still none of them was able to give any direct testimony against the defendant. James N. Kosmond was the attorney for defendant's ex-wife. The defendant's son, whom the record showed to be most unfriendly to his father, offered no direct testimony against his father. Lawrence W. Harris, who represented the defendant at the hearing held on May 1, 1963, testified that after the hearing he had been discharged as the attorney for the defendant. He gave a factual statement as to what occurred in the courtroom on May 1, 1963. He testified that he did not hear the defendant make the remark charged against him at that time although he was, from the record as we read it, in the proximity of the defendant during all of the time until the defendant left the courtroom with him.

In People v. Panczko, 20 Ill2d 237, 170 NE2d 130, defendant was charged with having made a contemptuous statement in the presence of the jury while the trial judge was in chambers. The jury trial was suspended and the judge heard sworn testimony of witnesses bearing on the alleged contemptuous behavior. One of the petit jurors testified that she heard the defendant say "They are trying to frame me." The court reporter testified "I heard the word frame and the word screwdriver." The Assistant State's Attorney testified that he didn't hear what the defendant said. The police officer stated that the defendant mumbled something to him across the table about a screwdriver, and that he couldn't make it

141

out. Another officer, who was on the witness stand, did not hear the defendant say anything to anybody. Another witness testified that he heard something about a screwdriver but that is all he could hear. The defendant testified that he had said to Officer Corbett "After this trial is over I want to frame that screwdriver" and that Officer Corbett had said "What are you mumbling about? I can't understand what you are saying." The court in that case on page 240 stated: "Of the eight witnesses testifying, only Sophie Shaw attributed any statement to the respondent that could possibly be considered contemptuous. In view of the testimony of the other seven witnesses hereinbefore recited, it is clear that the respondent was not proved guilty beyond a reasonable doubt."

There is a marked similarity between the Panczko case and the case before us. Only one witness has testified that the defendant made the contemptuous charge. The defendant denies having made the charge. All others did not hear any conversation take place between the defendant and his ex-wife although they were in close proximity to the defendant during the hearing on May 1, 1963. Under the facts in this case, we are constrained to hold that the defendant was not proven guilty of criminal contempt beyond a reasonable doubt on the charge that he had the judge fixed and therefore that conviction must be reversed.

As to the conviction and sentencing of the defendant for having lied as to the court's prejudice in defendant's sworn petition for change of venue, the trial court, of course, had no authority to question the defendant.

In People v. Shiffman, 350 Ill 243, 182 NE 760, on page 246, the court said: "The right to a change of venue from a judge in a criminal case on compliance with the statute is absolute. (Citing cases.) . . . It is not for the judge to determine whether or not he entertains

142

prejudice against the defendant. In a criminal case, when a defendant in apt time brings himself within the terms of the statute the trial judge has no discretion as to whether or not a change of venue will be granted. He must allow it as a matter of right. He cannot question the truthfulness or the good faith of the charge of prejudice. When the statute has been complied with, the trial judge loses all power and authority over the case except to make the necessary orders to effectuate a change of venue." See also People v. Mosley, 24 Ill2d 565, 182 NE2d 658.

The People in this case have conceded that the conviction and sentence of contempt based upon the affidavit supporting the petition for change of venue must be reversed.

The conviction of the defendant and his sentence of contempt for the remark to his ex-wife that the defendant had fixed the judge is reversed. The conviction and sentence of contempt based upon the affidavit supporting the petition for change of venue is reversed.

Convictions reversed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.